GEORGE  W.  CARNEY.

*v.*

THOMAS  TULLY  *et al.*

74  375
68a  322

1. MECHANICS' LIEN — *notice by sub-contractor.* The notice provided in the mechanics' lien law, to be given by a sub-contractor to the owner of the property, to hold him liable, must be in writing, and must be served personally. Service by mail is insufficient to charge him.

2. SAME — *law strictly construed.* The statute in relation to mechanics' liens, being in derogation of the common law, those claiming its benefits must bring themselves clearly within its provisions.

3. EVIDENCE — *jury bound to regard same.* A jury has no right to disregard the testimony of three witnesses as to a fact, in opposition to that of one only, from mere caprice, but are bound to give it its just weight.

APPEAL from the Circuit Court of Cook county ; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. SPRINGER & CORWIN, for the appellant.

Messrs. RUNYON, AVERY & COMSTOCK, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an appeal from a decree rendered by the circuit court of Cook county, in an action under the mechanics' lien law of 1869, to recover from Carney, the owner of the lot, for materials furnished. The contractors, O'Connor & Co., undertook to erect the building, he having made default in the payment for the same.

Both O'Connor and appellant were served with process, and on trial by the court and jury, a decree was rendered against both the defendants — O'Connor in the sum of seven hundred and nineteen dollars and seventy-seven cents, and against Carney in the sum of six hundred and fifty dollars and fifteen cents.

To reverse this decree against himself, Carney appeals.

The only question to which we have directed our attention is, have appellees, the plaintiffs in the action, brought themselves within the provisions of the statute ? The act is amendatory of the mechanics' lien law, and was designed to protect sub-contractors, in which relation appellees stood to appellant.

The second section of the act provides, the party claiming to have performed labor, or to have furnished materials to the original contractor, shall cause a notice to be served upon the owner or lessee, or his agent, of the fact of his having performed labor, or furnished materials, and that he shall hold the house or building and the owner's interest in the ground liable therefor. If, then, a contract was in writing between the original contractor and sub-contractor, a copy of it, if obtainable, is to be served with the notice, and attached thereto, and the same must be served within twenty days from the comple-

tion of the sub-contract, or within twenty days after payment should have been made to the person performing the labor or furnishing the material.

Section 3 provides for service on an absent owner. Sess. Laws 1869, pp. 255, 256.

Appellant was a resident of the place where the building was erected.

From the terms employed in the second section the conclusion is irresistible, as the notice must be in writing, and the form given, that there must be personal service. The statute itself is in derogation of the common law, and those claiming its benefits must bring themselves within its provisions. Service of a written notice always means actual, personal service. The notice, if any was served on appellant, was served on the 7th of November, 1872, and by Thomas Tully, one of the appellees. He states it was at appellant's house on Butterfield street, and there were present in the room, besides appellant, two other gentlemen, one of whom looked like appellant's brother.

Appellant denies in the most positive terms that any notice was personally served upon him by either of the appellees, Thomas Tully, nor by any one representing him, nor by his brother. A notice being handed him, he stated he had seen the notice before it was sent to him by mail.

Never saw Tully at his house but once—at the time he saw him there he did not deliver to him a copy of such notice as was shown him a moment ago—he, Tully, had another errand at that time—he demanded the contract between witness and O'Connor, which he refused to give him—his brother and a gentleman by the name of Rawson were sitting in the room with them the only time Tully called.

The person " who looked like appellant's brother " was Edward Carney, and he testified that he saw Thomas Tully at their house on Butterfield street, and heard a conversation between him and appellant—was there all the time until Tully went away. There was nothing said about a notice for mechanics' lien at that time by Tully—he did not serve a notice

in writing for mechanics' lien on his brother at that time—another man named Rawson was also present.

Rawson testifies he saw Tully at appellant's house—was there all the time Tully was—heard all the conversation between them—Tully asked for a contract—appellant said he would give him a copy, and sat down to write one—Tully went out—nothing whatever was said at that time about the service of a notice of a mechanics' lien. Tully did not leave with appellant a copy of any instrument or notice for mechanics' lien or any other.

That this was the same collection of individuals spoken of by Thomas Tully in his examination as a witness, there can be no doubt. Their testimony disproves the statements made by Tully about the service of a notice at that time. The evidence greatly preponderates against him, and we know of no rule of law or of reason why the jury should not have been influenced by it. They had no right from mere caprice to discard this testimony, but were bound to give to it its just weight. Had they done so, they would have found there was no personal service of notice upon appellant.

That a notice by mail reached appellant is established, but that was not the kind of service the statute contemplates, and the court should so have told the jury. It is impossible to say what kind of service the jury found. If by mail, that was not sufficient. If personal service at appellant's house, the weight of the evidence is decidedly against any such service by Thomas Tully, or any other person representing appellees.

For the want of service of notice the liability of appellant to appellees, admitting their claim to be just against O'Connor, had not accrued, and he was at liberty to make payment to the principal contractor, notwithstanding the sub-contract.

For the reasons given the decree is reversed.

*Decree reversed.*

Mr. JUSTICE SCOTT: I do not concur in the reasoning or the conclusions of this opinion.