THE HANNAH & LAY MERCANTILE COMPANY, JAMES A. BOOTS, AND THE J. E. GREILICK COMPANY v. JOHN G. MOSSER, THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY, ROBERT SPROUL, WILLIAM T. McGURRIN, JOHN W. TRAVIS, AND CHARLES S. TRAVIS.

*Mechanic's lien—Service of notice on owner—Jurisdiction—Fraud of claimant—Description of premises—Waiver of objections by owner—Costs on appeal.*

1. A failure to serve personally, within the county in which the premises sought to be charged with a lien under the mechanic's lien law of 1891, as amended in 1893, are situated, upon the owner, part owner, or lessee of said premises, or, in case of his absence from said county, then upon his agent having charge of said premises within said county, a copy of the statement or claim of lien, or, in case neither of said persons can be found within said county, the non-service of said copy by posting it in some conspicuous place on said premises, is fatal to said lien; service by mail, or personal service outside of the county, being insufficient under the statute.

2. The six months, within which proceedings to enforce a mechanic's lien must be commenced in order to continue the same, must be computed from the date of the filing in the office of the register of deeds of the statement or claim of lien to the date of the filing of the bill to enforce said lien, or the cross-bill provided for by section 10 of the mechanic's lien law of 1891.

3. A material-man, who had sold to a contractor a quantity of material to be used for purposes other than those of the contract, credited generally on the contractor's account a payment made by him the same day that he received a large sum from the contractee. The material-man afterwards sold to the contractor other material to be used outside of the contract. After the contractor had absconded, the material-man, in making up his lien account, at first credited the full payment thereon, but afterwards changed the credit so as to discharge all of the items for material used outside of the contract, amounting to within $15 of said credit, thus leaving but said $15 credited to the contractor in the statement or claim of lien, and in this form swore to the account as correct in all particulars. And it is held that such action on the part of the material-man was an attempted fraud upon the contractee, and destroyed the lien; citing *Gibbs v. Hanchette*, 90 Mich. 657.

4. Where the land against which a lien is sought to be enforced is imperfectly described in the statement or claim of lien, but the building erected thereon is accurately described, the lien will be held good as against the building alone, under section 9, subdivision 4, of the lien law of 1891, as amended in 1893.

5. Three claimants filed several bills to enforce mechanic's liens. The solicitors for the owner of the property, at the hearing, and after answers in the nature of cross-bills, filed by other claimants who had been joined as defendants in each suit, had been served on said solicitors, stipulated that all of the cases might be heard together, and that but one decree need be entered. And it is held that, in view of said stipulation, which was acted upon, the defendant owner is estopped from claiming that said answers were filed without leave of the court, or that the same were not seasonably served, or that no process issued.

6. But one record was presented on the hearing, and but one brief was filed by the solicitors for the defendant owner in all the cases. And it is held that on the dismissal of the original bills, and of the cross-bill of one of the defendant claimants, but one solicitor's fee will be taxed in favor of the defendant owner.

Appeal from Grand Traverse. (Corbett, J.) Argued February 14 and 15, 1895. Decided April 16, 1895.

Bills to enforce mechanics' liens. Defendants Sproul & McGurrin and J. W. Travis & Son filed answers in the nature of cross-bills asking like relief. Defendant rail-

way company appeals. Decree reversed in part, and modified as stated in the opinion. The facts are stated in the opinion.

*Pratt & Davis,* for complainants.

*Smiley, Smith & Stevens,* for appellant.

*Sweet & Perkins,* for defendants Sproul & McGurrin.

*Philip H. Travis,* for defendants J. W. Travis & Son.

LONG, J. In June, 1893, the defendant railway company entered into a contract with John G. Mosser, by which he was to construct an eating house for the company at Traverse City, according to plans and specifications agreed upon, for the sum of $3,397. This included the furnishing by Mosser of all materials as well as all labor. Mosser commenced the construction of the eating house in June, and had substantially completed it on August 15. On July 14 the company paid him $1,500, and on August 18 the sum of $1,500; leaving a balance, including extras, of $568.03. On receiving the last payment, Mosser absconded from the State, after first making an assignment for the benefit of his creditors. Several parties, among whom are the complainants, filed liens upon the building, as follows: Hannah & Lay Mercantile Company, $293; James A. Boots, $396; J. E. Greilick Company, $325; Sproul & McGurrin, $298; J. W. Travis & Son, $383,—a total of about $1,695. Bills were filed to enforce these liens, and the cases were heard together, and a joint decree entered against the defendant company and Mosser. The amounts of the several claims, as above stated, were allowed, and made a lien upon the premises, and an order of sale entered to satisfy the liens. The amounts found due to all the claimants aggregate something over $1,100 more than the amount due from the defendant company to Mosser on the contract. The defendant company appeals from this decree. We shall discuss the claims separately, as

the questions raised in some are not applicable to others.

### Hannah & Lay Mercantile Company.

It is contended that the decree establishing a lien under this claim should be reversed, because there was no compliance with the lien law, which provides for service of a copy of the statement and claim of lien on the owner of the premises. Section 6, Act No. 199, Laws of 1893, provides:

"Every person filing such statement or account as provided in the preceding section, except those persons contracting or dealing directly with the owner, part owner, or lessee of such premises, shall, within 10 days after the filing thereof, serve on the owner, part owner, or lessee of such premises, if he can be found within the county, or, in case of his absence from the county, on his agent having charge of such premises within the county wherein the property is situated, a copy of such statement or claim; but, if neither of such persons can be found within the county where such premises are situated, then such copy shall be served by posting in some conspicuous place on said premises within five days after the same might have been served personally could the principal or agent, as aforesaid, have been found."

The only service claimed in this case is by the mailing of a copy to "Charles M. Heald, Esq., Grand Rapids, Mich.," together with a letter written to Mr. Heald. No copy was served on the company's agent in charge of the building, no copy was posted on the building, and neither the letter nor envelope was addressed to Mr. Heald as "general manager of the railway company," nor as any officer or agent of the company. The papers were received at Mr. Heald's office, opened, and the receipt acknowledged by a clerk in the office saying the matter had been turned over to the general attorney of the company. It is contended by the defendant company that this service was not in compliance with the section of the statute above quoted:

1. Because mailing a copy of the claim of lien was not a service of it within the meaning of the section.

2. Because mailing a copy to Charles M. Heald was not equivalent to mailing a copy to the defendant company.

3. Because service outside the county is not authorized by the statute.

4. Because, there being an agent of the railway company in charge of the eating house at the time, the law required service on him.

5. Because, if there were no such agent, the statute requires the posting of the claim of lien on the premises.

It is contended on the other hand:

1. That personal service is not required, as the term is used only in referring to the time when substituted service may be had.

2. That county lines are not referred to as restricting the place where service may be made, but, if not found in the county, and no agent is found in charge, then substituted service may be resorted to by posting upon the building.

3. That the statute does not require the claimants to go outside of the county to make service, but they may content themselves with substituted notice, and that, if the notice is served outside the county, and gives actual notice, it satisfies all the requirements of the statute.

·The proofs show that George E. Hunt was the agent of the defendant company, in charge of the building. He was the station agent there, and he testifies that the complainants, the Hannah & Lay Mercantile Company, Mr. Boots, and the J. E. Greilick Company all knew that he was the agent. He was the only representative of the company there in that county. It is admitted that no service was made on him, and that no notice of the claim of lien was posted upon the building.

This statute is in derogation of the common law, and those claiming benefits under it must bring themselves within its provisions. Phil. Mech. Liens, § 367a. The statute provides for service on the owner, part owner, or lessee of the premises, if he can be found within the

county; and it is evident from the closing paragraph of section 6, above quoted, that this must be *personal* service, for it is there provided that if the owner, part owner, lessee, or agent cannot be found within the county where the premises are situate, "then such copy shall be served by posting in some conspicuous place on said premises within five days after the same might have been *served personally* could the principal or agent, as aforesaid, have been found." The general rule as to method of serving notice is laid down in 15 Amer. & Eng. Enc. Law, 134, as follows:

"Where the statute requires notice, without prescribing the method of service, personal notice is intended, and personal notice must be given by a delivery thereof directly to the person to be notified, and not by delivering the original or a copy to his servants or members of his family at his house. Leaving the original or a copy at the residence with some one other than the person to be served is, perhaps, sometimes spoken of as personal service in a loose way, where there can be no mistake about the real meaning (as in case of bills and notes), to distinguish it from service through the mail, but personal service is, properly, service upon the person to be served; and the general rule is that where notice is required by statute, and the method of service is not prescribed, personal service is meant."

*Carney v. Tully*, 74 Ill. 375, was a suit to enforce a mechanic's lien, and the only question involved was the sufficiency of the service of notice. It was conceded that a notice had been mailed to the owner, and received by him. It was said:

"The second section of the act provides that the party claiming to have performed labor or to have furnished materials to the original contractor shall cause a notice to be served upon the owner or lessee, or his agent, of the fact of his having performed labor or furnished materials, and that he shall hold the house or building. * * * From the terms employed in the second section the conclusion is irresistible * * * that there must be personal service. The statute itself is in deroga-

tion of the common law, and those claiming its benefits must bring themselves within its provisions. Service of a written notice always means actual personal service."

In *Ryan v. Kelly*, 9 Mo. App. 396, decided in 1880, the notice of lien was served by delivering the same at the usual place of abode of the owner to the servant girl in his employ. It was said:

"It is true that the doctrine in Missouri is that the mechanic's lien law should receive a liberal construction, but it is a mistake to suppose that the courts are to do away by construction with the plain provisions of the act. The law, for obvious reasons, provides that the owner, whose property is made liable for an indebtedness not arising out of any contract to which the owner of the property to be charged with the lien was a party, shall be served with notice. The statute provides for the case of the absence or non-residence of the owner by prescribing that the notice may be served upon the owner or his agent; but the statute neither specifies nor indicates any other service than personal service, and whenever this is the case it is settled that personal service is meant. To the cases cited by appellants to this effect, and to those referred to above, a mass of citations might be added, and we know of none to the contrary. Where the legislature has prescribed the mode in which notice shall be given, the courts cannot substitute some other form of notice as an equivalent,"— citing *McDermott v. Board of Police*, 25 Barb. 635; *Rathbun v. Acker*, 18 Id. 393.

In the present case, however, the Legislature has expressly fixed the mode of service, and designated it as personal service upon the owner, part owner, or lessee. The other modes are substituted service, when this personal service cannot be had upon the owner, etc. No service in the mode pointed out by the statute was made, and consequently no lien existed at the time of filing the bill. The bill, therefore, must be dismissed as to the Hannah & Lay Mercantile Company, with costs of the court below to the defendant company.

The James A. Boots claim must fail for the same

reasons given in the matter of the Hannah & Lay claim. The service made was the same; and that bill must be dismissed, with costs of the court below to the defendant company.

### The J. E. Greilick & Co. claim.

It appears that Mosser had purchased goods from Greilick which were used elsewhere, and that on July 29 and August 19 he procured other goods from Greilick, which were not for the eating house, but which were shipped away. The goods purchased which were not used for the eating house amounted to $60. On July 14 Mosser paid Greilick $75 on account, and it was credited generally on account. Greilick heard that Mosser had absconded before he made up his lien account, and in making that up he used sufficient of the $75 payment to discharge all the outside items against Mosser, including the items for goods sold Mosser after the $75 was paid, before giving any credit on the lien account. Although Mosser had paid to Greilick the $75 on the very day he received $1,500 from the defendant company, there appears in the lien account a credit of only $15. The original account is returned into this Court, and it appears that Greilick first made up his lien account by crediting the full amount of the $75 as paid thereon, and then changed the figures, thus giving a credit of only $15, and in this form swore to it as correct in all particulars. It is confessed that this change of credit was made by Mr. Greilick himself, and after Mosser had gone away, and with the evident intent to get from the defendant company the whole amount. Greilick concealed this change, even from his attorneys, and it was only ascertained by his cross-examination on the trial. It was an attempted fraud upon the defendant company. The case falls in principle within the rule laid down in *Gibbs v. Hanchette*, 90 Mich. 657, 660, in which it was said:

"The purpose of the statute is that an accurate and truthful claim shall be filed. The authorities very gen-

erally hold that where there is an honest mistake of fact, made in the honest belief of its correctness, courts will not for that reason hold that the lien is lost. But where claimants place upon record a statement which they know is not correct, the authorities are very uniform that the lien is lost."

In *Lynch v. Cronan*, 6 Gray, 531, under a statute of like import with our own, Chief Justice Shaw held that a failure by a lienor to give a credit for $5 upon a claim for $24 destroyed the lien.

But, aside from this, there was a failure of service of notice of lien, the same as in the Hannah & Lay case. This bill is therefore dismissed, with costs of the lower court to defendant company.

### *The Sproul & McGurrin claim.*

In this case personal service of the notice of the claim of lien was made upon an agent of the defendant company. But it is contended that no valid proceedings were ever begun by which the lien could be enforced. It appears that in September, 1893, the Hannah & Lay Mercantile Company, the J. E. Greilick Company, and James A. Boots filed separate bills of complaint to enforce their lien claims, and Sproul & McGurrin were made defendants with the railway company in each suit. Sproul & McGurrin had filed their claim of lien with the register of deeds in August, 1893. On December 8, 1893, they filed an affidavit of service with the register of deeds, and December 9 they filed an answer in the nature of a cross-bill in each of the three suits, praying for affirmative relief against their codefendants Mosser and the railway company. No copies of these answers were served on the railway company or its solicitors until the day when the hearing of the cases in open court began. No notice was given of the filing of these cross-bills, nor was any process issued thereon, nor leave obtained from the court to file the cross-bills; and until just before the hearing the defendant railway company had no notice or

knowledge that any such answers or cross-bills had been filed. When the proofs were offered, the defendant company objected to the same on the above grounds.

Section 10, Act No. 179, Laws of 1891, provides:

"Proceedings to enforce such lien shall be by bill in chancery under oath, and notice of *lis pendens* filed for record in the office of the register of deeds shall have the effect to continue such lien pending such proceedings. And in such proceedings the complainant shall make all persons having rights in said property affected or to be affected by such liens so filed in the office of the register of deeds, and all persons holding like liens so filed, and those having filed notice of intention to claim a lien, parties to such action. And all persons holding like liens, or having filed notice of intention to claim a lien, or any other persons having rights in said property, may make themselves parties thereto on motion to the court and notice to complainant, and may file their intervening or cross-bills, or answers claiming the benefit of cross-bills, and notices of *lis pendens* therein. Intervening or cross-bills shall be on oath, and all bills sworn to shall be evidence of the matters therein charged unless denied by answer under oath," etc.

Act No. 179, Laws of 1891, was amended by Act No. 199, Laws of 1893. Section 9 of this latter act provides that—

"The several liens herein provided for shall continue for six months after such statement or account is filed in the office of the register of deeds, and no longer, unless proceedings are begun to enforce the same," etc.

The answers in the nature of cross-bills were filed December 9, 1893, which was within four months after the statement of lien was filed with the register of deeds by the claimants here. The six months would elapse on February 26, 1894. While the answers were filed within the six months, they were not served on the codefendant,—the railway company,—and it had no notice of them, until in April following. The claimants here contend that the filing of the answers in the nature of cross-bills was within the time; that no leave of court was

necessary to bring in the defendant company; and that the date of service of the cross-bills is immaterial, as the proceedings were commenced when the cross-bills were filed. Counsel rely upon *Sheridan v. Cameron*, 65 Mich. 680, 682, to support this contention. It was there said:

"We think the filing of a bill or petition is the beginning of the suit, and that the service of process is only a step in the cause."

Under the statute then in force the proceedings to enforce the lien were to be commenced within 60 days, and the reasons were given there that led to the conclusion that the filing of the bill was the beginning of the suit or proceedings, as, if the defendant were absent, and must be brought in by publication, the 60 days would elapse before the service was legally completed. We think the time must be computed from the filing of the claim of lien to the date of filing the bill or cross-bill asking affirmative relief.

The defendant railway company, at the hearing and after the answers in the nature of cross-bills had been served on it, stipulated by its solicitors that all the causes might be heard together, and they were so heard. In view of this stipulation it cannot now be heard to say that the answers were filed without leave of the court, or that service was not made in time, or that no process issued. Sproul & McGurrin were regularly made parties defendant to these bills. They appeared, and filed their answers in the nature of cross-bills. Both the railway company and Sproul & McGurrin were present in court by their solicitors, and the causes proceeded under the stipulation, and by this stipulation it was agreed that but one decree need be entered in the causes. By this appearance and stipulation the railway company is estopped from raising the questions suggested. It is uniformly held that all objections to the process or proceedings by which a defendant is brought into court are waived by pleading to the merits. *Gunn Hardware Co.*

*v. Denison*, 83 Mich. 40. If the time of the service of the answers was insufficient, the court could very properly have extended it under the last paragraph of section 10 of Act No. 179, Laws of 1891, which provides:

"Amendments may be made to any bill or cross-bill at any time before final order, and, if it shall appear that any party has had insufficient notice of any such proceedings, such further notice shall be given as the court shall think just."

No further time was asked, but the parties went to hearing and thus waived those claims.

It is contended, further, as to this claim, that there is no evidence of service of notice of lien on the owner or agent, nor any evidence of posting of notice. Reliance is placed by claimants on the allegations of service in the cross-bill, and the production of the affidavit of such service, filed with the register of deeds. This made a *prima facie* case. This question was settled in *Bourget v. Donaldson*, 83 Mich. 478.

It is contended, further, that though proof of service is made by the affidavit, yet the service was made outside the county, and was therefore not in compliance with the statute. The affidavit states:

"That on the 25th day of August, A. D. 1893, he served a statement of amount due and claim for a lien, * * * with a notice, * * * upon the Chicago & West Michigan Railway Co., a corporation, * * * by serving the same personally upon Charles M. Heald, general manager of said railway company, by handing the same to him personally on said 25th day of August, A. D. 1893."

There is no showing that the claim was served within the county where the property is situate. The affidavit of service is made by Walter F. Mercer, who swears that he resides at Grand Rapids, and is the agent of Sproul & McGurrin, who reside at Grand Rapids. It is evident that the case was heard below upon a service which admittedly was made at Grand Rapids, and outside the

county where the property is situate. Counsel·claim
that this point was not raised below, but we think the
objection that the affidavit "does not show a legal service
of the papers" sufficiently raises the question. · Section 6·
of the act of 1893 is fully set out in the discussion of the
Hannah & Lay claim, and provides for the service of
notice of lien. The question of personal service was set-
tled in discussing that claim. The point now raised is
whether the service upon the owner must be made within
the county. We think that this section fully settles the
question that the service, if made upon the owner, must
be made within the county. If the owner can be found
within the county, notice must be served upon such
owner. The section negatives the idea of service any-
where else upon the owner. No other service upon the
owner is recognized. If not served upon the owner
within the county, then service may be made upon the
agent within the county having charge of the property;
and, if no service can be made upon either within the
county, then by posting upon the building. These are
the specified modes of service, and the general rule is
that, where a specified mode of service is pointed out,
that mode must be followed. This claim must therefore
fail for want of proper service of notice, and the cross-
bill must be dismissed, with costs of the court below to
defendant railway company.

### J. W. Travis & Son claim.

These lien claimants were also made defendants in the
three suits first named, and filed answers in the nature
of cross-bills; and under a stipulation with the solicitors
for the defendant railway company they were to have
the same relief as they would have been entitled to had
they filed original bills. The notice of lien was served
on "George E. Hunt, having in charge such premises
.within the county wherein the property is situated." The
only objection urged against this claim is that relating
to the description of the property. Section 5 of the act

of 1891 provides that the claim of lien shall contain "a correct description of the property to be charged with the lien." It is contended that no such correct description is contained in the claim of lien. While we think the description of the land is imperfect, the building itself is accurately described. Subdivision 4, § 9, Act No. 199, Laws of 1893, provides for a decree against the building alone, and under that provision the lien will be held good against the building. The decree in this case will therefore be modified so that a sale of the building alone may be made, unless the lien is paid within 60 days from the entry of modified decree here. J. W. Travis & Son will recover their costs of both courts from defendant railway company.

The defendant railway company will recover the costs of this Court to be taxed against the Hannah & Lay Mercantile Company, James A. Boots, the J. E. Greilick Company, and Sproul & McGurrin in equal proportions. Only one record is presented here, and but one brief by the railway company in all the cases. One solicitor's fee only will therefore be taxed.

The other Justices concurred.