JENKS v. DANIEL.

1. APPEAL AND ERROR—CHANCERY CASES CONSIDERED DE NOVO.
   Supreme Court considers chancery cases *de novo*.

2. MECHANICS' LIENS—EQUITY—VALIDITY OF LIEN.
   Fact that owner may file a bond and discharge claim of lien filed by contractor or may assert rights by way of cross bill when lienor sought to foreclose his lien does not prevent owner from bringing suit in chancery to test validity of material and labor lien and for an accounting where owner alleges lien was void because not timely filed, because amount claimed was false, building was not completed in accordance with plans and specifications, work was defective and had to be repaired (3 Comp. Laws 1929, §§ 13105, 13107, 13109).

3. EQUITY—JURISDICTION—DETERMINATION OF ALL ISSUES INVOLVED.
   Chancery court, having properly taken jurisdiction for purpose of an accounting between owner and contractor, retained such jurisdiction for purpose of determining validity of latter's lien which was a cloud upon owner's title and for purpose of determining all disputes and issues between the parties arising out of the contract and building construction involved (3 Comp. Laws 1929, § 13105 *et seq.*).

4. MECHANICS' LIENS—EQUITY—ADEQUATE REMEDY AT LAW—AC-
   COUNTING.

   Owner of building was not precluded from maintaining chancery
   suit to invalidate defendant contractor's material and labor
   lien filed, for an accounting and for damages for breach of
   contract on ground that owner had a complete and adequate
   remedy at law where, because of lien, owner was unable to
   obtain balance of construction loan, subcontractors had not
   been paid and dealings between parties were so confused as
   to require determination by way of an accounting (3 Comp.
   Laws 1929, § 13105 et seq.).

5. SAME—EXCESSIVE CLAIM—GOOD FAITH—MISTAKE.

   Material and labor lien was properly found void where claimant
   made an excessive claim not in good faith nor through an
   honest and unintentional mistake in that it included nonlien-
   able items and charges (3 Comp. Laws 1929, § 13105 et seq.).

6. APPEAL AND ERROR—CHANCERY CASE—ACCOUNTING—FINDINGS—
   EVIDENCE.

   A trial court who sees and hears the witnesses is better able to
   judge of credibility and weight to be accorded their testimony
   than Supreme Court and where testimony clearly sustains trial
   court's findings on accounting, Supreme Court will sustain
   them.

7. MECHANICS' LIENS—EXCESSIVE CLAIM OF LIEN—FINDINGS—EVI-
   DENCE.

   In owner's suit against contractor to set aside a material and
   labor lien and for an accounting and to recover damages for
   breach of contract, evidence as to defendant's defective and
   unworkmanlike construction justified decree that owner was
   indebted to contractor in a sum less than a third of the
   amount claimed under the lien (3 Comp. Laws 1929, § 13105
   et seq.).

CHANDLER, WIEST, and BUTZEL, JJ., dissenting.

Appeal from St. Clair; George (Fred W.), J.
Submitted October 14, 1942. (Docket No. 110, Cal-
endar No. 42,182.) Decided January 4, 1943. Re-
hearing denied April 6, 1943.

Bill by Kate S. Jenks against C. E. Daniel to have
a mechanic's lien declared void and for an account-

ing.   Decree   for   plaintiff.   Defendant   appeals.
Affirmed.

*Watson & Inman,* for plaintiff.

*Frank J. Ortman,* for defendant.

Starr, J.   Defendant appeals from a decree deter-
mining that his material and labor lien against
plaintiff's property was void and determining the
amount of his claim against plaintiff to be $1,624.47.

On August 31, 1940, plaintiff entered into a
written contract with defendant, a general building
contractor, for the construction of a four-store
building on certain land owned by plaintiff in Port
Huron.   The contract (prepared by an architect)
provided that defendant would furnish all work and
materials and "do everything required by this
agreement, the general conditions of the contract,
the specifications and the drawings."   The contract
also provided, in part:

"It is understood and agreed that time is the
essence of this contract and that work shall be com-
menced immediately upon the execution thereof and
that the building shall be completed and final certifi-
cate of architect issued within 90 days from date
hereof.   All expediting shall be the contractor's
responsibility.   *   *   *

"The owner shall pay the contractor for the per-
formance of the contract, subject to additions and
deductions provided therein, in current funds as
follows:

"Thirty thousand and no/100 dollars.   *   *   *

"Payment shall be made in full upon completion
of building and issuing of architect's certificate.

"If owner decides to place a construction loan on
this building and make payments to the contractor
as follows: *$10,000 when roof is on; $10,000 upon*

*completion of plastering and balance at completion
of building, the owner is to receive a credit of $1,000
from contract price.* \* \* \*

"Before issuance of final certificate the contractor
shall submit evidence satisfactory to the architect
that all pay rolls, material bills, and other indebted-
ness connected with the work have been paid.

"If after the work has been substantially com-
pleted, full completion thereof is materially delayed
through no fault of the contractor, and the architect
so certifies, the owner shall, upon certificate of the
architect, and without terminating the contract,
make payment of the balance due for that portion of
the work fully completed and accepted. Such pay-
ment shall be made under the terms and conditions
governing final payment, except that it shall not
constitute a waiver of claims. \* \* \*

"Whereas certain changes of plans as drawn have
been discussed and agreed upon and plans are now
in the contractor's hands pending the incorporation
of said changes therein; now, therefore, it is under-
stood and agreed that the supervising architect
shall have final and complete authority to approve
or disapprove of the revisions and changes in the
plans. \* \* \*

"Contractor agrees to have on the job at all times
during the construction, when contractor is not
personally present, a foreman with the express
authority and direction of contractor to receive and
carry out instructions of the supervising architect."

To finance the cost of such building plaintiff ob-
tained a first mortgage "construction loan" from
an insurance company, and the evidence shows that
defendant knew of such method of financing. De-
fendant commenced construction work in September,
1940. The roof having been completed, plaintiff, in
accordance with the contract, on November 15, 1940,
paid defendant $10,000. On December 5, 1940, the
plastering having been finished, plaintiff paid de-

fendant the further sum of $10,000. That part of the building referred to as stores three and four was completed by December 7, 1940. In April, 1941, plaintiff made additional payments amounting to $4,000, which made a total of $24,000 paid to defendant on the contract price of $30,000.

The insurance company which made the construction loan required that an architect from Detroit do the architectural work. A Detroit architect and defendant, a Detroit contractor, accordingly were employed. Plaintiff's son acted as her agent throughout the contract negotiations and during the building construction. Plaintiff also employed a supervising architect from Port Huron. A representative of the Detroit company, which arranged for plaintiff's construction loan, also acted as plaintiff's agent in renting the stores in the building and in connection with certain phases of the construction work.

It appears that soon after the contract was made in August, 1940, trouble arose between the parties. There were many changes in the plans and specifications for construction of the building. There were delays in the construction, and the parties blamed each other for such delays. There were disputes as to extras charged by defendant and as to credits claimed by plaintiff. During the winter of 1941 there was trouble between the parties over changes in the building plans, plaintiff's alleged failure to make further payments, defendant's failure to complete the building, the unpaid bills of subcontractors, and also over the quality of defendant's construction work. The building had not been entirely completed by April 1, 1941, and on April 16th plaintiff wrote defendant as follows:

"Your refusal to come to Port Huron to supervise the finishing of the last store, and your obvious

hindrance to my effort to complete the job myself has placed me in the position of having to treat your contract as being breached.

"From the very beginning, you have broken the contract by your failure to provide the adequate supervision specifically set forth in the contract. By reason of this breach, the job has dragged and it has been necessary for my son and the architect to supply the supervision which you have failed to give.

"Early last week you were made an additional payment of $4,000, not required by the contract, but given with the understanding that you would co-operate by immediately preparing the last store for its tenant. This, you have utterly failed to do.

"There are numerous other instances of breaches of your contract which I can and will cite you, if necessary.

"If you wish to discuss this matter any further, please contact Mr. Wyeth (supervising architect) by telephone and arrange an immediate appointment so that my son can be present and go over the matter with you."

Subsequent to writing the above letter plaintiff completed certain minor details of the building construction at her own expense. On June 21, 1941, defendant filed a material and labor lien against the land and building (3 Comp. Laws 1929, § 13105 *et seq.* [Stat. Ann. § 26.285 *et seq.*]). In such lien he claimed that the sum of $4,998.44 was due from plaintiff for material and labor furnished. In his lien defendant stated "that the last of such labor was performed and materials were furnished on the 22d day of April, 1941."

On July 30, 1941, plaintiff began the present chancery action alleging, in substance, that the mechanic's lien filed by defendant was void because not filed within 60 days after the last labor was per-

formed and materials furnished and because defendant had knowledge that the amount claimed in such lien was false; that defendant had not completed the construction of the building in accordance with the plans and specifications; that defendant's construction work was defective and was not done in a good and workmanlike manner, and that it was necessary for plaintiff to have much of such work repaired or done over. Plaintiff alleged that she was entitled to credit for damages and cost of repairs resulting from defendant's defective construction work and failure to perform the contract properly; that she was entitled to credit for amounts she had paid directly to subcontractors and to credits resulting from agreed changes in the plans and specifications; also that, having obtained a "construction loan," she was entitled to a credit of $1,000 on the contract price. She alleged further that defendant was indebted to her in the amount of $3,893.57.

In her bill of complaint plaintiff asked that the lien filed by defendant be declared void, that the court determine the amount due subcontractors, materialmen, and laborers, and that plaintiff be directed to pay such amounts and be given credit therefor on the contract price; also that the court determine the damages sustained by plaintiff as the result of defendant's breach of contract.

Defendant filed motion to dismiss plaintiff's bill of complaint because the bill "sounds entirely in damages based upon a contract in writing" and that plaintiff had a complete and adequate remedy at law, and also because the bill failed to show any ground for equitable relief. The court's order denying defendant's motion to dismiss stated, in part:

"The statute provides that in the event of non-payment of moneys claimed to be due, a builder may

file a lien against said property. Immediately upon the filing of such lien, it becomes a cloud upon the title of an owner, but the statute does not give the said owner of property any redress in the event of certain irregularities in the filing of a lien or various disputes which may arise in reference to the details of the work done by the contractor, and also various claims filed by subcontractors who performed certain portions of the work of erecting the building.

"The plaintiff herein therefore seeks the only remedy she has, and that is, the setting aside of the lien and also prays for an accounting as to the various amounts claimed to be owing subcontractors, and also other disputes as to the amounts due the contractor and credits which she claims she is entitled to. * * *

"The bill also prays for an accounting, and the only form (forum) in which a lien may be set aside or an accounting had is in the chancery side of the court."

Defendant then filed answer generally denying the allegations of plaintiff's bill and her right to the relief sought. In his answer defendant stated that he "relies upon his statutory right to enforce the lien" which he had filed against plaintiff's property. Defendant did not, in his answer or by cross bill, seek to enforce his material and labor lien, nor did he ask determination of his alleged claim against plaintiff. It appears from counsels' briefs, but not from the record, that, subsequent to denial of his motion to dismiss plaintiff's bill, defendant began an action at law against plaintiff in the circuit court for Wayne county to recover $8,645.29 alleged to be due him in connection with the building construction. It also appears from counsels' briefs that defendant, within the one-year period after filing his lien, began a chancery action to foreclose such lien (3 Comp. Laws 1929, § 13109 [Stat. Ann. § 26.289]); also that, by stipulation, such chancery action and

the law action in Wayne county are both held in abeyance pending the determination of the present appeal.

At the conclusion of the trial of the present case the trial court entered opinion stating, in part:

"The first question before the court is whether the bill is well founded. It alleges that the lien was not timely filed and was fraudulent and false as to amount. * * * No actual work was done nor was any other material furnished by defendant after about March 22, 1941. The lien was filed on June 21, 1941, which was not within the 60 days allowed by the statute.

"A further examination of the proofs clearly indicates that defendant must have known that his first claim was far less than the amount set up in his statement of account. He was familiar with the practice where buildings are financed by construction loans and knew that plaintiff could not get the balance of her loan until the building was completed and shown to be free from liens. The effect of his action was to tie up the plaintiff in her effort to clean the matter up and pay off the claims of subcontractors and materialmen until she either settled with defendant on his own terms, or else awaited his pleasure in foreclosing the lien within the year allowed by statute, if defendant's contention is correct.

"While it is true that a mechanic's lien will not be invalidated by reason of his claiming in good faith, or by honest mistake, too great a sum in his statement of lien, it is equally the law that such good faith or mistake must be actually present. I do not feel that under the facts the defendant herein acted either in good faith or by honest mistake.

"Defendant urges that the mechanic's lien statute is purely statutory, and since no right is expressly given by the act to remove liens by the property owner, then none exists and the owner must await

action on the part of the lienholder, meanwhile having the title to the property clouded regardless of the validity of the lien. Were this the law, a dishonest contractor or materialman could effectually tie up a person's property for a year.  *  *  *

"The bill of complaint  *  *  * does state a cause of action within the jurisdiction of a court of chancery and the proofs support the same.

"The bill further prays for a determination of the account between the parties. It alleges many instances where defendant breached his contract in failing to follow plans and specifications or in failing to do the work in a workmanlike manner. Defendant urges that a determination of this is purely a legal matter, which would be true were it not for the lien. The court, having assumed jurisdiction, will retain jurisdiction and conclude the matter. As soon as defendant's motion was denied he commenced an action at law in Wayne county for money claimed to be due under the contract. The facts being before this court, and plaintiff being forced to commence this suit by reason of defendant's action, it would be an undue hardship for her to be forced to defend herself in such separate action."

The trial court allowed defendant a credit of $624.09 for extras furnished. The court allowed plaintiff a credit of $1,000 because, under the terms of the contract, she had made a construction loan; also credit of $1,794.85 by reason of changes in the plans and specifications and for amounts paid to subcontractors. The court's opinion stated further:

"I further find that defendant failed to follow the plans and specifications or failed to perform part of the work in a workmanlike manner in many instances. The cost of rectifying these omissions and errors was testified to by a competent building contractor and no contradictory testimony was produced by defendant. I therefore find that plaintiff

is entitled to the following deductions: (Itemization of additional credits totaling $1,900.61)."

The trial court, after applying debits and credits in an accounting between the parties, determined that plaintiff owed defendant a balance of $1,624.47 on the building contract. A decree accordingly was entered May 8, 1942, declaring defendant's material and labor lien void and determining that plaintiff was indebted to defendant in the above amount of $1,624.47.

Defendant appeals from such decree and, in effect, contends that plaintiff could not maintain the present action and was not entitled to the relief granted. This being a chancery case, we consider the same *de novo*.

Defendant's principal contention is stated in his brief as follows:

"It was strenuously urged on behalf of the defendant in this case that having filed his lien, which was valid upon its face, he had a statutory right to proceed to the enforcement of his claim in accordance with the provisions of the lien statute, and if the owner should be dissatisfied, his remedy as provided by the lien statute was to file a bond."

In other words, defendant claims that, having filed a lien June 21, 1941, he could begin chancery proceedings to foreclose such lien at any time within one year thereafter (3 Comp. Laws 1929, § 13109 [Stat. Ann. § 26.289]) and that plaintiff could not maintain the present action to test the validity of such lien. Further, he contends that plaintiff's only redress was either to obtain a discharge of the lien by filing a bond (3 Comp. Laws 1929, § 13107 [Stat. Ann. § 26.287]) or to wait until defendant began proceedings to foreclose his lien and then assert her rights by answer or cross bill. Such contention and argument are without merit. The

above-cited statute (3 Comp. Laws 1929, § 13109) provides a limitation of one year within which defendant could begin proceedings to enforce his lien. The above-cited statute (3 Comp. Laws 1929, § 13107) provides a method by which plaintiff could have obtained a discharge of the lien by filing a bond. However, under the facts and circumstances of the instant case, such statutes do not prevent plaintiff from maintaining the present chancery action.

We are satisfied that plaintiff's bill of complaint alleged facts giving the chancery court jurisdiction. Having properly taken jurisdiction for the purpose of an accounting, the court retained such jurisdiction for the purpose of inquiring into the validity of defendant's lien which was a cloud upon plaintiff's title and for the purpose of determining all disputes and issues between the parties arising out of the contract and building construction in question. *Johnson* v. *Douglas*, 281 Mich. 247; *Stephenson* v. *Golden* (on rehearing), 279 Mich. 710; *Flanagan* v. *Harder*, 270 Mich. 288; *Burgess* v. *Jackson Circuit Judge*, 249 Mich. 558.

Defendant contends further that plaintiff cannot maintain the present chancery action because she has a complete and adequate remedy at law. We should agree with this argument if plaintiff claimed damages only for defendant's breach of the building contract. However, in the present case there were other issues and facts involved which gave the chancery court jurisdiction. Because of defendant's lien on the land and building, plaintiff was unable to obtain the balance of the construction loan funds from the insurance company. There was serious question as to the validity of defendant's lien. It appears that subcontractors had not been paid. The dealings between the parties had reached such a

confused condition that only through an accounting could their respective rights be determined. It is clear that plaintiff did not have a complete and adequate remedy at law and that, under all the facts and circumstances, she was justified in seeking equitable relief in a chancery court.

In his lien defendant claimed that the sum of $4,998.44 was due him from plaintiff. From a careful study of the record we are convinced that such lien was not filed in good faith and that defendant knew, or should have known, that the claim asserted in such lien was in excess of the amount rightfully due. His testimony in the trial of the present case is indicative of his bad faith and fraudulent intent in asserting a claim of $4,998.44 in his lien. He testified in detail as to many items of extras totaling $4,308.79 charged to plaintiff. He admitted plaintiff was entitled to credits of $1,663.50 which, deducted from his total charge for extras, left a balance of $2,645.29 owing from plaintiff. To this balance defendant added the sum of $6,000 remaining unpaid on the building contract, making a grand total of $8,645.29. As hereinbefore mentioned, defendant had begun law action in Wayne county against plaintiff to recover such sum of $8,645.29. Defendant's testimony as to certain items which he claimed as extras, and which it may be inferred were included in his lien claim, clearly shows his bad faith. He testified as to items of extras, in part, as follows:

"The list of items for which I am charging extras and the amounts are as follows: * * * I charged $500 for raising $5,000 to take care of money which was promised me from the owners in December. * * * Delays in construction in connection with enlarging store No. 2, $500; * * * cost of delays for nonuse of equipment $250; * * * 20 trips

from Detroit to Port Huron because of extras and delays at $20 a trip, $400.''

We are satisfied that defendant's lien claim of $4,998.44 was not made in good faith and was not made through an honest and unintentional mistake. The lien claim apparently included items and charges, above mentioned, which were nonlienable. We agree with the trial court that such lien was void and of no effect. *Currier Lumber Co.* v. *Ruoff,* 298 Mich. 505; *Equitable Trust Co.* v. *Detroit Golf & Recreation Co.,* 260 Mich. 606; *Silverstein* v. *Berman,* 254 Mich. 478; *J. E. Greilick Co.* v. *Taylor,* 143 Mich. 704; *Hannah & Lay Mercantile Co.* v. *Mosser,* 105 Mich. 18; *Gibbs* v. *Hanchette,* 90 Mich. 657.

It would serve no purpose to discuss in detail the conflicting and confusing testimony adduced by both plaintiff and defendant regarding debits and credits claimed by them in connection with the building construction. The testimony clearly indicates that much of the building construction was done in a defective and unworkmanlike manner. The trial court saw and heard the witnesses and was better able to judge their credibility and the weight to be accorded their testimony. The testimony amply supported the trial court's finding.

Suffice it to say that we believe the trial court reached a proper and equitable conclusion in determining that plaintiff was indebted to defendant in the sum of $1,624.47. In view of our conclusions the question as to whether defendant's lien was timely filed and other questions presented by defendant do not require consideration.

The decree declaring defendant's material and labor lien to be void, and determining that plaintiff was indebted to defendant in the sum of $1,624.47, is hereby affirmed. Plaintiff shall recover costs.

BOYLES, C. J., and NORTH, BUSHNELL, and SHARPE, JJ., concurred with STARR, J.

WIEST, J. (*dissenting*). I do not concur in the opinion of Mr. Justice STARR that the owner of real estate upon which a mechanic's lien has been filed can bring suit in equity against the lienor for an accounting and discharge of the lien.

The lien was filed June 21, 1941. Plaintiff's bill was filed July 30, 1941. Foreclosure of the lien is an action *in rem* with procedure mapped by statute. Plaintiff's bill is an action *in personam* and may not supplant the lien law and procedure thereunder. The complaints of plaintiff stated in her bill, with the exception that the lien interfered with her financial plans, could all be considered under proper pleading in a proceeding to enforce the claimed lien and, in my opinion, may not be made the basis of a separate suit in equity. *Koch* v. *Sumner*, 145 Mich. 358 (116 Am. St. Rep. 302, 9 Ann. Cas. 225). Mechanics' liens may be discharged by filing of a bond. 3 Comp. Laws 1929, § 13107 (Stat. Ann. § 26.287). The action at law by the lienor in no respect affected the lien. 3 Comp. Laws 1929, § 13122 (Stat. Ann. § 26.302). It was an accumulative remedy. *F. M. Sibley Lumber Co.* v. *Wayne Circuit Judge*, 243 Mich. 483.

My Brother's opinion would establish a precedent inconsistent with the lien law and procedure as fixed by statute.

The decree should be reversed and the bill dismissed.

CHANDLER and BUTZEL, JJ., concurred with WIEST, J.