## FAIRBAIRN *v.* MOODY.

1. MECHANICS' LIENS—PAYMENTS TO CONTRACTOR—ESTOPPEL.
   A subcontractor is estopped to assert a mechanic's lien as to payments that have been made by the owner to the contractor in reliance upon the subcontractor's expressed desire that they be so made.

2. SAME—OWNER'S RISK—DISTRIBUTION OF FUND.
   Under section 1 of the mechanic's lien law (Act No. 179, Pub. Acts 1891, as amended by Act No. 199, Pub. Acts 1893), providing that the owner shall not be liable to any subcontractors, material men, or laborers for any greater amount than he contracted to pay the original contractor, but that the risk of all payments made to the original contractor before the expiration of the period within which claims for liens may be filed, without the latter's having furnished a sworn statement as to the number and names of subcontractors, etc., shall be upon the owner, and that such payments shall not defeat any lien unless distributed among the subcontractors, material men, or laborers, "or, if distributed in part only, then to the extent of such distribution," the owner is not protected in such payments, though they equal the full contract price, and are distributed for labor and materials, if the distribution is not made *pro rata* among all those entitled to the fund.

3. SAME—CLAIM OF LIEN—VARIANCE.
   The lapse of a day between the date and the filing of an affidavit and claim of lien, under section 5 of the act, will not invalidate the lien.

4. SAME—SERVICE UPON OWNER—SUBSTANTIAL COMPLIANCE.
   Service of a copy of a claim of lien upon the owner on the day of its date, being the day before it is filed, is a substantial compliance with the provision of the statute requiring such service to be made within 10 days after filing.

5. SAME—EXCESSIVE CLAIM—MISTAKE.
   A mechanic's lien is not invalidated because the claim of lien, through an honest mistake, was for an excessive amount.

| | |
|---|---|
| 116 | 61 |
| 118 | 85 |
| 116 | 61 |
| e121 | 201 |
| 116 | 61 |
| 125 | 180 |
| 116 | 61 |
| 127 | 566 |
| 127 | 567n |
| 116 | 61 |
| s72NW | 386 |
| 132 | c 20 |
| 116 | 61 |
| 144 | 2317 |
| 116 | 61 |
| 149 | 6691 |
| 116 | 61 |
| f151 | 2281 |

1. MECHANICS' LIENS—CONTRACT PRICE—PRO RATA DISTRIBUTION AMONG CLAIMANTS.

Where the claims of subcontractors, material men, and laborers exceed the contract price, the amount for which a lien may be enforced by one who has received payments upon his claim, and who has estopped himself from claiming a portion of the balance, is limited to the amount in which his *pro rata* share of the whole exceeds the aggregate of the payments made and the sum he is estopped from claiming.

2. REHEARING—COSTS.

Where the court, in determining the amount for which the complainant in lien proceedings was entitled to a decree, overlooked the fact that certain payments had been made upon the claim in question, making an application for rehearing necessary, no costs of the rehearing were allowed.

Appeal from Wayne; Donovan, J. Submitted January 6, 1898; original opinion, for reversal, March 1, 1898. Rehearing granted May 4, 1898; final opinion, modifying the earlier one, May 24, 1898.

Bill by Thomas Fairbairn against George T. Moody, John J. Warren, and the Kalamazoo College, to enforce a mechanic's lien. From a decree dismissing the bill, complainant appeals. Affirmed.

*James H. Pound,* for complainant.

*T. T. Leete, Jr.,* for defendant Moody.

MONTGOMERY, J. Complainant filed a bill to enforce a mechanic's lien. The bill was taken as confessed by the defendants Warren and the Kalamazoo College. The defendant Moody answered, setting up a claim of estoppel. The circuit judge dismissed the bill, and the complainant appeals.

The evidence to show an estoppel was in substance as follows: The complainant was a subcontractor. After the work was completed, he stated to the architect, Mr. Mills, that he was anxious to get the matter closed up,

and that he wished that Mr. Moody would hurry up and pay Mr. Warren, so that he (complainant) could get his money out of Warren. Subsequently the architect gave Mr. Warren the usual certificate, and Mr. Moody paid him the full amount remaining due. The architect testifies that he stated to Mr. Moody that complainant stated that he was anxious to have him give the certificate, so that Warren could get his money, and Mr. Moody testifies that Mr. Mills told him this, and that it was because of this conversation that he did pay Mr. Warren. It is true there are other portions of Mr. Moody's testimony which tend to show that he did not pay the money in reliance upon the statement made to Mr. Mills and reported to him; but he subsequently corrects such statements, and affirms that they were made because of a failure to comprehend the questions of counsel. We think the evidence fully shows that the last payment was made in reliance upon this request of complainant, and the circuit judge's finding to that effect should be affirmed. This payment was $204.92, and complainant's claimed lien amounted to $300, leaving a balance of $95.-08 as to which the defense of estoppel does not apply. It therefore becomes necessary to inquire whether there are defects in the proceedings.

It is claimed that, as the full contract price was paid, and all distributed for labor and materials, there can be no further lien; but under section 1 of the mechanic's lien law, Act No. 179, Pub. Acts 1891, as amended by Act No. 199, Pub. Acts 1893, the owner is not protected in payments made to the principal contractor, in the absence of a statement on oath by the contractor, showing the names of the subcontractors, etc., and such payments are made at the risk of such owner, and do not discharge the lien, unless distributed by the contractor among the subcontractors, material men, and laborers, "or, if distributed in part only, then to the extent of such distribution."

It is also claimed that no preliminary notice of the

intention to furnish material was served. It is true no notice was served prior to the furnishing of material, but section 1 provides that such notice shall be sufficient if served at any time after the 10 days, but before the original contractor furnishes the statement under oath required by the same section. Such a notice was served later in the present case.[1]

The affidavit and claim of lien referred to by section 5 was sworn to on the 20th of October, and appears to have been filed on the 21st. It is claimed that this difference in dates invalidates the lien. Counsel relies on the analogy between these proceedings and attachment cases, and cites *Drew* v. *Dequindre*, 2 Doug. (Mich.) 93, and *McPherson* v. *McGillis*, 93 Mich. 525. We think these cases ought not to rule this. The purpose of this filing is to furnish notice. The owner is not deprived of the possession of property on the strength of this affidavit, and we do not think the lapse of a day between the date and the filing should invalidate the notice.

It is also said that the service of the notice of filing this lien was premature, as it was served on the day of its date, and before filing, whereas the statute provides that the notice must be served within 10 days after filing; but we think this a too technical construction of the statute. The purpose of the notice was subserved in this case.

It is also urged that the claim of the lien was excessive, as it was stated at $331. We are satisfied of the good faith of complainant in this regard, and the mistake does not invalidate the lien.

It appears that the total cost of the work to the principal contractor was substantially $3,500. The contract price was $2,700, which has all been paid. Had this been distributed *pro rata* to the subcontractors, material men, and laborers, complainant would have received substantially 27-35, or $73.31, for which amount he is entitled to a decree. Complainant will recover costs.

The other Justices concurred.

---

[1] See *Blitz* v. *Fields*, 115 Mich. 675.

### ON REHEARING.

MONTGOMERY, J.   A rehearing was granted in this case, and briefs have been filed by both counsel.   The defendant's counsel says:

"Every dollar of the contract price has been distributed for labor and materials furnished in making the improvements.   Under the statute, this would appear to be a complete defense; but the court has practically read into the statute the condition that the distribution must be *pro rata*."

We have the misfortune to have been misunderstood by counsel.   The court has read nothing into the statute. We have construed the language employed in the statute itself.   By the plain provisions of the statute, payments made by the owner "before the contractor shall have furnished him with a statement as hereinbefore provided" shall be at the owner's risk.   "And no payment made to any contractor before the expiration of 60 days shall defeat any lien of any subcontractor, material man, or laborer unless such payment has been distributed among the subcontractors, material men, or laborers, or, if distributed in part only, then to the extent of such *distribution*."   What is meant by "distribution?"   The definition given by Webster is:   "The act of distributing or dispensing; the act of dividing or apportioning among several or many; apportionment; as the distribution of an estate among heirs or children."   It cannot be said that the payment to one of the entire contract price would amount to "distribution," nor is it doubtful that the term as here employed means a distribution among all entitled to take; otherwise the provision is meaningless, and affords no protection to the laborer or subcontractor.

But it is contended that an error occurred in applying the principle to the former decision.   It appears that the actual cost of the building was $3,535; the contract price $2,704.   Complainant's *pro rata* share would be $576.13.

116 MICH.—5.

Four hundred dollars had been paid on this contract, and complainant would have been equitably entitled to receive $176.13 more. There was in the hands of the owner the sum of $204, which the court below held was paid to the contractor under such circumstances as to estop the complainant. We think defendant's contention in this respect must be allowed. It was an error to consider the balance of complainant's claim only, and this is the manner in which the mistake in computation occurred.

The decree of the court below dismissing the bill will be affirmed, with costs. As this rehearing was made necessary by our own error, no costs will be awarded for the rehearing.

The other Justices concurred.