ZILZ v. WILCOX.

1. MECHANIC'S LIENS—SUPPLEMENTAL BILL—EQUITY PRACTICE—
REVIEW ON ERROR.
   In proceedings for the enforcement of a mechanic's lien,
   the denial by the circuit judge of defendant's petition to
   present a supplemental bill, which privilege he did not
   ask for until after notice of appeal had been entered from
   a decree of the court, was discretionary and will not be
   reviewed on appeal in the absence of abuse.

2. SAME—BUILDING CONTRACT—EVIDENCE—BREACH.
   Held, that the evidence failed to establish the contention
   of the owner that the subordinate contractors colluded
   with the principal contractor to perpetrate a fraud on her
   by constructing and tendering a building not in accord-
   ance with the contract, but that if a difference appeared,
   she had impliedly, if not by express terms, assented to
   the alleged modification.

3. SAME—RIGHTS OF SUBCONTRACTORS—LIEN OF MATERIALMEN—
BREACH.
   But the mere failure of the contractor to perform strictly
   according to the provisions of the building contract would
   not defeat the liens of materialmen or subcontractors who
   furnished labor or materials that actually entered into
   the completed structure.

4. SAME—SERVICE—VALIDITY OF LIEN.
   The statute authorizing substituted service if the owner
   is absent from the county, by posting a copy of the claim
   on the premises (3 Comp. Laws 1915, § 14803), is to be
   strictly construed, and, hence, a subcontractor who failed
   to serve a copy of the claim on the agent of the owner
   within ten days of filing his lien could not enforce his
   claim of lien.

4. SAME—AFFIDAVIT—CAUSE—ATTORNEY AND CLIENT.
   The fact that one of the subcontractors made affidavit to
   his claim before a notary who was then his attorney, but
   who did not appear for him in the proceedings, did not
   render the claim void, under 3 Comp. Laws 1915, § 12082,
   which forbids attorneys and counsellors from adminis·

tering oaths in causes in which they may be professionally engaged, a cause being defined as a suit, litigation, action or proceeding in court.

5. SAME—EVIDENCE.
Where there was evidence of the defendant that a copy of one lien was not filed within the statutory period, but the subcontractor who filed it gave testimony that he thereafter performed work on the foundation to protect it against the weather, the lien is *held* to be sufficiently established.

6. SAME—VARIANCE.
And where there was a substantial but not misleading variance in figures between the evidence and bill of complaint, the court would not treat the difference as fatal, the lien having attached.

Appeal from Wayne; Codd, J. Submitted January 13, 1916. (Docket No. 133.) Decided March 30, 1916.

Bill by Frederick Zilz against Mary Wilcox and others to enforce a mechanic's lien. From a decree for complainant, defendant Wilcox appeals. Modified and affirmed.

*Bishop & Kilpatrick,* for complainant.

*James G. McHenry,* for defendant Wilcox.

*Devine & Snyder,* for defendant Mohr.

STEERE, J. Defendant Mary Wilcox appeals from a decree of the Wayne county circuit court in chancery adjudicating a lien upon a lot in the city of Detroit, belonging to her, in favor of complainant, Zilz, in the sum of $409.50, and of cross-complainant, Mohr, in the sum of $113.33, for labor and material done and furnished in the construction of a building upon said lot.

In 1911 defendant Wilcox decided to erect a two-family flat building upon said lot, and, not being a resident of Detroit, engaged her sister, Mrs. Williams,

who resided there, to act as her agent, giving Mrs. Williams a power of attorney to contract in her name and represent her generally in the project. Mrs. Williams entered into an oral contract with defendants Huth, who were general contractors doing business under the firm name of Huth & Son, to erect the desired building. Complainant, Zilz, had a subcontract with Huth & Son for the masonwork in said building, and Mohr for the plumbing. None of the contracts involved in this inquiry was in writing.

In the negotiations between Mrs. Williams and Huth & Son, William Huth submitted to her plans for a frame duplex house which he was proposing to build for other parties at a cost of $3,000, and it is her contention that their contract was to build a house for Mrs. Wilcox like the plans submitted for $4,500, except that it was to be brick veneer and without a bay window as shown in those plans. She testified that Huth promised to take the plans of the frame building and work them over to show a duplex house in accordance with their agreement and later submit them to her, but the plans which he finally submitted after the work had progressed for some time differed materially from those shown her when the contract was entered into.

Huth & Son soon entered upon the performance of their contract, having sublet the masonwork to Zilz for $1,140, and the plumbing and gas-fitting to Mohr for $325. These subcontractors were governed by plans and specifications furnished by the principal contractors with whom they dealt and under whose supervision they did work and furnished material. They had no business relations with Mrs. Williams and she did not assume any authority over them, although she was daily upon the premises as the representative of Mrs. Wilcox watching the work as it progressed, and made payments to the principal contractors from time to time, amounting to about $1,500, who, however,

never furnished her any sworn statement of laborers, subcontractors, materialmen, etc., as provided for under the mechanic's lien law (3 Comp. Laws 1915, § 14800). After the building had progressed until the basement was practically completed and ready for the superstructure, Huth & Son quit their contract without paying their subcontractors for work then done. They make no defense in this case, and neither do they appear as witnesses. Both of these subcontractors performed their contracts with labor and material so far as accompanying construction of the building would permit, but, when the principal contractors stopped and abandoned it, they could go no further, and, being unable to otherwise collect pay for what they had already done, filed liens upon the premises.

Defendant Mary Wilcox contends that the decree appealed from is erroneous for the following reasons:

"1. The court had no jurisdiction to grant a lien in favor of complainant or cross-complainant because: (1) The bill shows that the statement was not filed within 60 days as required by the statute; (2) was not properly verified; (3) not filed within the time limited; (4) not served on the owner; (5) and no proper substituted service was made by cross-complainant.

"2. There was a fatal variance between the allegations in the bill and the proofs, in that the bill alleged a contract for the foundation of the building only and the proofs disclosed a contract for the whole job.

"3. Neither lienor was entitled to a lien on the grounds that (1) neither complainant, nor (2) cross-complainant had completed his contract.

"4. Fraud was practiced upon the owner by the principal contractor and the subcontractor in that: (1) they were in collusion; (2) and practiced fraud on the owner; and (3) the owner received a substantially different building from what she contracted for.

"5. The defendant was entitled to file a supplemental bill to introduce a defense arising subsequent to the entry of the decree."

We find no error in the denial of defendant's petition for leave to file a supplemental bill. The petition was filed long after defendant had given notice of appeal from the decree rendered by the trial court, and no appeal was taken from the order denying such petition. If that order were properly here for review, we see no occasion to disturb the discretion of the court in denying the petition.

Neither do we find any substantial support in the testimony for defendant's contention that the subcontractor in collusion with the principal contractor perpetrated a fraud upon her by which she received a substantially different building from that she contracted for. While Mrs. Williams' evidence is to the effect that the plans Huth & Son adopted varied in certain particulars from those shown her when they contracted and as a result the building finally completed upon the property was but 47 feet long instead of 55, the excavation for the basement was lengthened on her insistence to 55 feet, and she testified that she was at the building several times every day while the work was in progress, looking after it. Neither she nor defendant found any fault with the work of the subcontractors, and Mrs. Wilcox testified that after she found the building had been shortened she wanted Huth & Son to go ahead and finish it at the contract price. Whatever may be contended as to the conduct of the principal contractors, we discover no foundation for the charge that the subcontractors were guilty of any fraudulent or dishonest conduct.

Under the undisputed facts there is no force in defendant's third contention that neither of the lienors is entitled to enforce his lien because he did not complete his subcontract.

"It is well established as a general rule that the failure of the principal contractor to complete his contract does not of itself defeat the right of the subcon-

tractor, workman, or materialman to a lien." 27 Cyc. p. 100.

They are entitled to protection for what they have done or furnished under the contract. *Delray Lumber Co.* v. *Keohane*, 132 Mich. 18 (92 N. W. 489).

Defendant's contention that the court had no jurisdiction to grant a lien because of defective service is clearly well founded as to cross-complainant Mohr. Section 6 of the lien law (section 10715, 3 Comp. Laws; 3 Comp. Laws 1915, § 14803) expressly provides that in cases of this nature the person filing a lien "shall, within ten days * * * thereof, serve on the owner, * * * or in case of his absence from the county, on his agent having in charge of such premises within the county * * * a copy of such statement or claim." Only in case neither can be found in the county within the ten days can a substituted service be had by posting the copy in a conspicuous place on the premises. The only proof of service was an affidavit sworn to in Ingham county by one James Tobias, who had formerly worked for Mohr, stating that he had served a copy by posting the same on the front part of the building on the premises. Although defendant's witnesses deny that any such notice was posted upon the building, yet, accepting the affidavit as true, it was not a legal service under the statute. Neither the pleadings nor proofs show that the owner or agent could not be found within the county. Mohr testified: that Mrs. Williams "was there one time, and I had some talk with her." That she was in the store picking out fixtures, and right after being there talked over the phone, and said she was pleased with them. That this was while they were doing the roughing in. That during this time she called them up and talked over the phone 25 or 30 times, and once called him up to see if he would finish the job.

"*Q.* You didn't make any attempt to serve the notice on Mrs. Williams?

"*A.* No, sir."

That she was the resident agent of defendant, and that Mohr knew it, is clearly shown.

On the question of whether a lien attaches, the mechanic's lien law is to be given strict construction in this State as applied to service of notice and personal service is imperative where possible. Such service was possible in this case, and was not made; consequently no lien attached. Not having complied with the statute, Mohr is not in a position to invoke the aid of the statute. Former decisions of this court conclusively dispose of the question beyond need of further discussion here. *Hannah & Lay Mercantile Co.* v. *Mosser,* 105 Mich. 18 (62 N. W. 1120) ; *Smalley* v. *Terra Cotta Co.,* 113 Mich. 141 (71 N. W. 466) ; *Wiltsie* v. *Harvey,* 114 Mich. 131 (72 N. W. 134) ; *Greilick Co.* v. *Rogers,* 144 Mich. 313 (107 N. W. 885) ; *Godfrey Lumber Co.* v. *Kline,* 167 Mich. 629 (133 N. W. 528).

While this same objection is urged as to service by complainant, Zilz, its only foundation is the denial of defendant that service was made upon her. It is undisputed that she was in Detroit with her sister at times during the months of November and December consulting in regard to the difficulties which arose over this building, and while there talked with Zilz about it. He filed proof of personal service upon her on December 29th, and testified positively that he served the copy on her on Hancock avenue, "where they lived in the old house." She testified that she was in Detroit for a few days after Christmas, until the 29th, and then went north again. We do not think the proof of personal service was successfully impeached.

The contention that Zilz's statement was not properly verified is based upon the fact that it was sworn

to before Frank P. Bumps, a notary public and attorney who prepared it for him, and it is urged that under section 2640, 1 Comp. Laws (3 Comp. Laws 1915, § 12082, note), which forbids attorneys and counselors from administering oaths in causes in which they may be professionally engaged, the jurat was a nullity.

In practice a cause is:

"A suit, litigation, or action. Any question, civil or criminal, contested before a court of justice." Black's Law Dictionary.

"Cause and case are used as synonyms in statutes and judicial decisions, each meaning a proceeding in court, a suit, an action." Words and Phrases, vol. 2, p. 1013, and cases there cited.

Bumps is not an attorney of record in this suit, cause, or case, and there is no proof that he ever was professionally engaged in any *cause* connected with this proceeding.

The contention that a copy of Zilz's statement of lien was not filed within the time limited therefor is based on Mrs. Williams' testimony that the sworn statement of lien, filed soon after the time when the last work was performed, and Zilz's testimony in substantiation of it, are untrue. His verified statement of lien shows that the last labor was performed and material furnished on the 23d of October, 1911, and it is so stated in his bill of complaint. She testified, apparently from memory, that he was gone on the 17th, and never came back except to put some fertilizer on to protect the work from frost. It is urged that Zilz's memory at the time of the hearing was so bad, and his testimony so contradictory, that the testimony of Mrs. Williams should be taken as true, and, to sustain this contention, counsel thereupon devote considerable space in their brief to a comparison of alleged conflicting statements made by Zilz. A study of Mrs. Williams' testimony discloses that she is at least a close second

in that infirmity, even to the extent of giving at various times three different contract prices for erection of the building. A review of this feature of the case will be of no general interest, and it is sufficient to state that an examination of the whole record does not satisfy us that the testimony of Mrs. Williams should prevail against the proof contained in the statement filed shortly after the work was completed and Zilz's testimony in which he affirms that statement, as to the last work being performed on the 23d of October, with the modification that they went back and finished up some work on the 25th. He also testified that he later went back to this work after the principal contractors had abandoned the contract and put material around the foundation to protect it from the winter weather.

Defendant further claims that a fatal variance exists between the allegations in the bill and the proofs, in the particular that the bill alleges that complainant had a contract to put in the foundation of the building for $400, while his testimony shows that he had a contract to do all the masonwork for $1,140.

Zilz testified that he had an oral contract for the cellar and brick work, figured from the plans Huth & Son had, at $1,140, he to furnish the material; that he did the basement grade high, 12-inch wall, and from there 8-inch wall ready for the woodwork, putting in windows and preparing the wall ready for the joists, and then was obliged to stop because the principal contractors abandoned the building; that while so engaged he put in the building $400 of material and work, and never received a cent for it. He did have a contract for putting in the foundation, which he says amounted to $400, but in his bill of complaint he did not state that portion of the contract which he was prevented from performing. It may be conceded that the bill was loosely drawn in that particular, but it

was not misleading as to any material matter. No claim is based upon any other portion of his contract. The bill clearly discloses all his claim and the nature of it. Mrs. Williams, who was daily at the building, was familiar with what Zilz was doing and knew what he did. She apparently had some knowledge of the amount he had earned, and knew he had not been paid. She testified that on November 2d she paid Mr. Huth $900, giving him a check for it, and giving it to him "particularly to pay Mr. Zilz. * * * There was nobody else on the job but Mr. Zilz. He is the first man, except $75 for the excavation." It is manifest that she desired and intended to pay Zilz, through Huth, what he had earned. She, however, paid the money to the principal contractor, from whom she had no protecting, statutory statement, and the subcontractor was not paid. As between the two, Zilz took proper steps to protect his legal rights, while she did not.

In *Smalley* v. *Terra Cotta Co., supra,* quoting from Jones on Liens, it is stated as the accepted policy that:

"Mechanics' liens are in derogation of the common law, depending for their existence wholly upon statutes, and therefore, upon the question whether a lien attaches at all, a strict construction is proper. * * * But, after the lien has once attached, a liberal construction should be put upon the statute, for the purpose of fulfilling its objects. The statute is highly remedial in its nature, and should receive a practical and reasonable construction to effect its objects."

It is not shown that defendant was prejudicially misled by the allegation in the bill as to the contract, and we cannot conclude that the variation complained of was misleading or is fatal. Zilz's lien being shown to have once attached, we think that a practical and reasonable construction of the statute sustains the subsequent proceedings to perfect his lien, including, as to him, the decree appealed from.

No lien having attached in behalf of Mohr, the decree should be modified to the extent of dismissing his cross-complaint, with costs to appellant; otherwise the same is affirmed, with costs in favor of complainant.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.