MARTIN v. TRAUTZ.

MECHANICS' LIENS — SERVICE OF NOTICE — VALIDITY—TECHNICAL
    DEFENSE—REMEDIAL STATUTE.
        On appeal by the defendants from a decree in favor of
        plaintiffs, in a suit to enforce a mechanics' lien on property
        held by husband and wife, the defense urged by defendants that the service of the order required by 3 Comp.

Laws 1915, § 14801, establishing the lien, was defective, *held*, under the evidence, too technical, in view of section 14822 declaring the statute to be remedial and to be construed liberally.

Appeal from Wayne; Mayne (Frederick W.), J., presiding.    Submitted January 26, 1922.    (Docket No. 141.)    Decided March 30, 1922.

Bill by Harry J. Martin and another, copartners as the H. J. Martin Company, against Michael Trautz and others to foreclose a mechanics' lien.    The Hamtramck Lumber & Supply Company filed a cross-bill to foreclose a mechanics' lien.    From a decree for plaintiff and cross-plaintiff, defendants Trautz appeal.    Affirmed.

*Frank C. Cook* and *John P. O'Hara*, for plaintiffs.

*Frank Day Smith*, for cross-plaintiff.

*Stellwagen, MacKay & Wade*, for appellants.

MOORE, J.    The plaintiff, the H. J. Martin Company, and the cross-plaintiff, the Hamtramck Lumber & Supply Company, filed mechanics' liens on October 17, 1919, and November 17, 1919, respectively, the former for $522.37 with interest, and the latter for $405.97 with interest, on the property owned by Michael Trautz and Kathryn Trautz, husband and wife.    From a decree in favor of the appellees the case is brought here by the appellants by an appeal.

It is the contention of the defendants that the service of the order establishing the Martin Company lien under this claim was defective, counsel citing *Hannah & Lay Mercantile Co.* v. *Mosser*, 105 Mich. 18, and *Zilz* v. *Wilcox*, 190 Mich. 486, 492.

Section 14801, 3 Comp. Laws 1915, provides:

"SECTION 6. Every person filing such statement or account as provided in the preceding section, except

those persons contracting or dealing directly with the owner, part owner or lessee of such premises, shall, within ten days after the filing thereof, serve on the owner, part owner or lessee of such premises, if he can be found within the county, or in case of his absence from the county, on his agent having in charge of such premises within the county wherein the property is situated, a copy of such statement or claim," etc.

At the outset the appellees insist the case is not properly here because the record shows as follows:

"Plaintiffs herein filed their sworn bill of complaint to foreclose their mechanic's lien. Defendants filed an unsworn answer. Upon the hearing plaintiffs offered their bill with the answer of defendants in evidence, and they were received as *prima facie* proof of plaintiffs' claim.

"Paragraph 6 of plaintiffs' bill reads as follows:

" 'That thereafter on, to-wit: the 21st day of October, A. D. 1919, your orators caused copies of said statement of account and claim of lien to be personally served upon Michael Trautz and Kathryn Trautz, his wife, the owners of the premises, against which said lien is claimed due, proof of service of which said lien has been properly made.'

"Defendants Michael Trautz and Kathryn Trautz, in their unsworn answer, replied to paragraph 6 of plaintiffs' bill as follows:

" 'They admit the allegations contained in paragraph six of the bill of complaint.'

"No question of any kind was ever raised by defendants about the service in this matter until the day of hearing, when Mr. Wade, as attorney for defendants Trautz, began to cross-examine Harry J. Martin in reference to the service he made of the claim of lien.

"Upon the objection by the attorneys for the plaintiffs to any testimony regarding the service of the claim of lien being raised, because of the answer of defendants admitting such service, the attorney for defendants asked leave to amend his answer to show that there was personal service on Mrs. Trautz. No

amendment of any kind to defendants' answer was ever allowed by the court. The only reference to the allowance of the amendment requested is as follows:

"*Mr. Wade:* Does your honor rule on the amendment?

"*The Court:* All right. You may proceed. I haven't passed upon that yet."

The court proceeded to try the case upon the merits and, after all the testimony was taken, said in part:

"The court will hold that the service was good in the case of the Hamtramck Lumber Company. I will find this, that whether it is a fact that Mrs. Trautz was in or without the county, it is apparent to me that Mr. Smith was given to understand that she was outside of the county, and that he acted in good faith in trying to obtain personal service upon her, and was led to believe by the action of Mrs. Trautz and her husband, particularly Mr. Trautz, that she was not within the county, and that she was not—it was impossible for him to obtain personal service, and that he therefore made all the service that was possible under the circumstances.   *   *   *

"In other words Mr. Smith apparently was seeking to obtain service; he knew what was necessary and he went to Mr. Trautz's home; it was at that hour of the day when Mr. Trautz ordinarily would have been in the dining room eating supper.   *   *   *

"Now it is inconceivable to me how Mr. Smith, acting for the express purpose of making a legal service, could have gone there and stayed without asking where she was, or making some inquiry, or making some effort to find her. According to Mr. Trautz, who, I take it, did not know at that time—didn't know that personal service was necessary upon Mrs. Trautz, and it would not be so impressed upon his mind as it would be upon Mr. Smith's. But at any rate, Mr. Smith was there; he put himself to some inconvenience and expense. He had been there several times, and it is inconceivable to me that he would have proceeded indifferently in reference to the presence of Mrs. Trautz, and for that reason I think his statement is correct and I take his version of it.

"In relation to the service in the case of H. J. Martin

Company, a copartnership composed of Harry J.
Martin and Randall E. Martin, I find that service of a
copy of the claim of lien was made upon Michael
Trautz upon the premises affected by said lien by
Harry J. Martin within the prescribed time, and that
at the same time Michael Trautz informed the process
server that Kathryn Trautz, his wife, was in a
serious physical condition, and that it would be im-
possible for him to see her, but that he, her hus-
band would take her copy and would accept service
for her.   The server thereupon gave both copies to
Michael Trautz, and while he was still upon the
premises and in the hallway of the house thereon,
Kathryn Trautz appeared and came down stairs into
the presence of her husband and the server.   There-
upon Michael Trautz handed to his wife, Kathryn
Trautz, in the presence of Harry J. Martin, the copy
of the claim of lien, which he accepted for her.   I
also find that Michael Trautz read to Kathryn Trautz
the contents of the claim of lien, and that she was
fully informed of its portent.   The defendants Michael
and Kathryn Trautz now raise objection to this
service and say that it was not a personal service upon
Kathryn Trautz.   *   *   *

"I think under the circumstances there is such a
service as under the law would be considered personal
service, there having been duly established the liens
for the amounts claimed with interest and taxable
costs."

We quote some of the testimony.   Mr. Martin is the
witness:

"Q. Did you tell Mr. Trautz what your business was
when he got into the house?

"A. Yes.

"Q. Did you tell him that you wished to serve a
copy of this lien—claim of lien upon him?

"A. Yes.

"Q. What did Mr. Trautz say?

"A. Mr. Trautz said that his wife was in an ex-
hausted condition—nervous, exhausted condition; that
I couldn't see her to serve the lien papers on her. and
he insisted that I couldn't see her, that she could not
be seen; that she was in such a condition that it would

be ridiculous to see her; and at that time Mrs. Trautz
wanted to know what all was going on, and she called
down stairs and came down stairs and the daughter
and the aunt came down stairs.   *   *   *

"*Q.* When Mrs. Trautz came down stairs who had
copy of the lien?

"*A.* Mr. Trautz.

"*Q.* Did he have both of them?

"*A.* He had both of them.

"*Q.* How did it happen that he had both of them?

"*A.* I insisted upon seeing her, and he wouldn't al-
low me to see her and as a gentleman I wouldn't go
upstairs to see the wife and serve it on her, and he
insisted upon *handing it to her for me.*

"*Q.* Did you consent to that?

"*A.* I did.

"*Q.* So that when Mrs. Trautz came down Mr.
Trautz had both copies?

"*A.* Yes.

"*Q.* You said that they—that she wanted to know
what was going on?

"*A.* Yes.

"*Q.* Did you explain to her?

"*A.* No, I didn't; Mr. Trautz—

"*Q.* Did anyone explain to her?

"*A.* Mr. Trautz told her it was about that building,
and that—

"*Q.* What did he say it was about?

"*A.* I don't remember his statements, but it was
to the effect that I was serving papers for a lien.   He
did it in a roundabout way, so that it wouldn't be taken
to be—

"*Q.* Did you say anything to him then about giv-
ing a copy to Mrs. Trautz?

"*A.* No.

"*Q.* Did he say to you when he took both of them
that he would give one to Mrs. Trautz?

"*A.* Yes, he did.

"*Q.* While Mrs. Trautz was there—while both Mr.
Trautz and Mrs. Trautz were in your presence, did Mr.
Trautz give one copy of the claim of lien to Mrs.
Trautz?

"*A.* Yes, he did.   *   *   *

"*Q.* So that there is no doubt but what that copy

of the claim of lien was placed in the hands of Mrs.
Trautz personally in your presence?

"*A.* No, there is no doubt.

"*Q.* You saw that done?

"*A.* Yes."

We now quote from Mr. Smith's testimony:

"*Q.* As a representative of the Hamtramck Lumber
Company, in this particular instance, did you serve a
copy of your claim of lien upon Mr. Trautz and Mrs.
Trautz?

"*A.* I did. * * * After I had filed the lien for
the Hamtramck Lumber Company I took two copies
of the lien to serve upon Michael Trautz and Kathryn
Trautz. I took two copies of them after they were
filed and went to look for Mr. and Mrs. Trautz,
Michael Trautz and Kathryn Trautz. I went to their
home on 123 Puritan avenue every day during the en-
tire ten days with the exception of Saturdays and
Sundays. * * * I can't exactly say how many
times but several times I stopped in the morning
to get service on Mr. and Mrs. Trautz. * * *
I telephoned Mr. Trautz and I told him I had a lien
to serve on he and his wife, that I had called at the
place of residence several times but was unable to find
either one at home, and I asked him when I could
make service. He said, 'You can see me any time
after 6:30, but you cannot see my wife.' I said 'Why.'
'Well' he says, 'she is not feeling well.' * * * I
explained to him that I had to make personal service
and I explained to him that I must hand it to her
personally. 'Well' he said, 'she is all shot, she is in
bad shape and a nervous wreck and you cannot see
her, and you can serve me. I will take all papers.'
When I saw his attitude I didn't argue any further,
but went out to his house the next evening at 6:30 and
met Mr. Trautz at his home and asked him where his
wife was and he said she was—had gone South—he
mentioned the place, but I have forgotten, but I re-
member distinctly as I figured, out of the county and
out of the city, and therefore it seemed to remove all
possibility of serving her within the county. I talked
to Mr. Trautz at least one hour and one half because
he was very much worked up over this matter and I
sat in his home. During the entire hour and a half

I heard no woman's voice; I heard no other noise except our own talking; and I believed she was, as he told me on the visit, and he said she had gone on a visit to get her health back, that is, to get her nerves in shape. Then after he had told me that, I then served him, or I then served her, by delivering a copy to him, and gave him a copy of the lien for himself and one for Mrs. Trautz * * * and I asked him if he was her agent, having charge of the premises, because I thought it necessary to put in that little paragraph, and he said, 'yes, certainly, I have charge of the premises. This is mine.' "

Mr. Trautz did not agree with Mr. Smith's statement that he told him his wife was away, and his testimony was in conflict with that of Mr. Martin and Mr. Smith in other respects. Mrs. Trautz was not a witness, nor was her deposition taken.

The instant case is quite unlike the two cases, *supra,* cited by counsel for the appellants. The trial court believed the testimony of Mr. Martin and Mr. Smith, and did not believe the testimony of Mr. Trautz where it was in conflict with theirs. What was said in a recent case in this court is germane:

"Upon this testimony the trial judge who saw the witnesses concluded that notice was served, and sustained the lien. We are satisfied that he was right in his conclusion." *Acme Lumber Co.* v. *Construction Co.*, 214 Mich. 362, 363.

Section 27 of the mechanics' lien law (section 14822, 3 Comp. Laws 1915) reads:

"This act is hereby declared to be a remedial statute and to be construed liberally to secure the beneficial results, intents and purposes thereof; and a substantial compliance with its several provisions shall be sufficient for the validity of the lien or liens hereinbefore provided for and to give jurisdiction to the courts to enforce the same." * * *

The statute was construed recently, we quote:

"In such consideration we shall be guided by the

rule that the proceedings are statutory, that the essential requirements of the statute leading up to the attaching of the lien must be complied with and the provisions of the statute in that regard must be strictly construed.  *Smalley* v. *Terra Cotta Co.,* 113 Mich. 141.  But this does not mean that such provisions shall be 'strangled by technicalities,' or that a forced or a strained construction should be indulged in order to defeat the lien."  *Acme Lumber Co.* v. *Construction Co.,* 214 Mich. 360.

The defense urged is too technical.

The decree is affirmed, with costs to appellees.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.