SPARTAN ASPHALT PAVING COMPANY v GRAND LEDGE
MOBILE HOME PARK

OPINION OF THE COURT

1. MECHANICS' LIENS—SERVICE ON OWNER—SUBSTITUTED SERVICE—
   SERVICE BY POSTING—REGISTER OF DEEDS—STATUTES.

   A person claiming a mechanics' lien must attempt personal
   service for ten days of a copy of a statement of account of the
   amount due him, after he has recorded the statement of ac-
   count with the register of deeds, before he may resort to
   substituted service by posting a copy of the statement of
   account on the premises of the owner (MCLA 570.6; MSA
   26.286).

2. MECHANICS' LIENS—SERVICE ON OWNER—SERVICE BY POSTING—
   SUBSTANTIAL COMPLIANCE.

   A person who served a copy of a statement of account of the
   amount due him on the property owner by posting the state-
   ment of account on the owner's premises on the *seventh* day
   after he recorded the statement of account with the register of
   deeds substantially complied with the mechanic's lien statute
   where other preliminary lien requirements had been met.

3. MECHANICS' LIENS—SUBSTANTIAL COMPLIANCE.

   Substantial compliance with the provisions of the mechanic's lien
   statute is sufficient for the validity of a lien where no prejudice
   is caused by the deviation from strict compliance (MCLA
   570.27; MSA 26.307).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 53 Am Jur 2d, Mechanics' Liens § 170.
[3] 53 Am Jur 2d, Mechanics' Liens § 168.
[4] 53 Am Jur 2d, Mechanics' Liens § 6.
[5] 53 Am Jur 2d, Mechanics' Liens § 236.
  Rights and remedies under lien statute of one performing work
    only part of which is of a lienable character. 149 ALR 682.
[6] 27 Am Jur 2d, Equity §§ 28, 37.
[7–9] 61 Am Jur 2d, Pleading §§ 308–313.
[10, 11] 61 Am Jur 2d, Pleading § 317.

Concurrence by D. E. Holbrook, Jr., J.

4. Mechanics' Liens—Roadways—Parking Grounds.

The protection of the mechanic's lien act does not extend to persons furnishing materials and labor in connection with the construction of roadways or parking grounds; the coverage of the act is limited to persons furnishing labor and materials for projects expressly mentioned in the act.

5. Mechanics' Liens—Lienable Items—Non-lienable Items—Segregation.

A contractor who provided both lienable and non-lienable materials and services in connection with the construction of roadways or parking grounds is not entitled to a mechanics' lien for lienable and non-lienable items which cannot be segregated.

6. Equity—Quantum Meruit—Unjust Enrichment.

An allegation of unjust enrichment is the basis of a *quantum meruit* recovery.

7. Pleading—Complaint—Amendment—Leave of Court—Court Rules.

Leave of the court shall be freely given to a party to amend his complaint when justice so requires (GCR 1963, 118.1).

8. Pleading—Amending Complaint—Leave of Court.

Leave should be granted to allow a party to amend his complaint unless unfair prejudice to the opposing party would result; the possibility that the opposing party might lose if the amendment is allowed is not the sort of prejudice which will bar amendments.

9. Pleading—Amending Complaint—Undue Delay—Prejudice.

Leave of the court to allow a party to amend his complaint may be denied because of undue delay where the delay has unfairly prejudiced the opposing party.

10. Pleading—Amending Complaint—Judges.

A judge may deny a motion to amend a complaint based upon his opinion of the merits only if the amended complaint is legally insufficient on its face.

11. Motions—Pleading—Amending Complaint—Discretion—Statement of Reasons.

The exercise of judicial discretion in rulings on motions to amend

complaints must be supported by a statement of reasons for the ruling.

Appeal from Eaton, Richard Robinson, J. Submitted June 3, 1976, at Lansing. (Docket No. 25510.) Decided September 8, 1976. Leave to appeal applied for.

Complaint by Spartan Asphalt Paving Company against Grand Ledge Mobile Home Park, Grand Ledge Ravines, Inc., Jack R. Courshan and others for foreclosure of a mechanic's lien, recovery *quantum meruit,* or creation and foreclosure of an equitable lien. Summary judgment for defendants on all counts. Plaintiff appeals. Affirmed in part, reversed in part and remanded.

*Brown & Winckler,* for plaintiff.

*Farhat, Burns & Story, P. C.* (by *Vittorio E. Porco),* for Grand Ledge Mobile Home Park and Jack R. Courshan.

Before: ALLEN, P. J., and D. E. HOLBROOK, JR., and E. H. PAPP,* JJ.

ALLEN, P. J. Defendant Grand Ledge Mobile Home Park, a limited partnership, owns and operates a mobile home development in Eaton County. Plaintiff Spartan Asphalt Paving Company supplied paving materials and labor worth in excess of $15,000 to the defendant's general contractor in 1973. When the general contractor failed to pay, Spartan Asphalt filed a suit against the defend-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ant,[1] the general contractor and others. The complaint against defendant sought foreclosure of a mechanic's lien, judgment on a *quantum meruit* theory, and/or creation and foreclosure of an equitable lien. This appeal follows the trial judge's grant of the defendant's motion for summary judgment on all three counts.

The motion for summary judgment was made under GCR 1963, 117.2(1), *i.e.,* on the ground that the plaintiff had failed to state a claim upon which relief could be granted. In a written opinion, the trial judge indicated that he would grant the motion and enter summary judgment. The correctness of that ruling as to each of the complaint counts is discussed below.

Several months later, but still before final judgment had been entered, the plaintiff filed a motion for reconsideration and a motion to amend Counts II and III of its complaint. The motion for reconsideration argued that the judge had erred in his interpretation of the mechanic's lien statutes. The motion to amend sought to add allegations of possibly fraudulent dealings by the defendant and its corporate general contractor. These allegations included the nature of the interlocking ownership mentioned in footnote 1, *infra,* and an allegation that the defendant had never paid the general contractor for the materials and services provided by the plaintiff.[2] Although it was not mentioned in

---

[1] References to the "defendant" in this opinion refer to the limited partnership. The general contractor, Grand Ledge Ravines, Inc., was incorporated and is owned by individuals who were—at least at one time—members of the partnership. The interlocking ownership interests will figure in some of the discussion of possible remedies which follows. The plaintiff has already won a default judgment against the contractor; but all efforts to collect on that judgment have been unsuccessful. The other named defendants are parties in interest because they hold mortgage liens on the defendant's property.

[2] The incorporators of the general contractor were, at one time, both limited and general partners in the defendant. The defendant's

the motion to amend the complaint, we note with
interest the fact that the defendant's law firm
initially appeared on behalf of both the defendant
and the general contractor. The appearance on
behalf of the contractor was later withdrawn on
the ground that it had been a "mistake".

Following a hearing, the trial judge entered a
written opinion denying the plaintiff's motion for
reconsideration. The opinion mentioned only the
mechanic's lien theory. It made no mention of the
motion to amend the complaint. However, the
judgment entered pursuant to the opinion denied
both the motion for rehearing and the motion to
amend. The proceedings on the motion for recon-
sideration and amendment will be discussed later.
We first address the initial ruling granting sum-
mary judgment for the defendant on each of the
three complaint counts.

### Count I—Mechanic's Lien

The mechanic's lien statute, MCLA 570.1 *et seq.;*
MSA 26.281 *et seq.,* seems designed to create
confusion and frustrate anyone who attempts to
meet all of its requirements. Nevertheless, the
plaintiff almost succeeded. It served notice of in-
tent to claim a mechanic's lien on the defendant
by certified mail within 90 days after beginning
work. MCLA 570.1; MSA 26.281. It also recorded a

---

brief on appeal states that those individuals have terminated their
interest in the limited partnership. However, the timing and motiva-
tion for the ownership change have not been explained. Similarly, the
defendant's appeal brief denies the allegation that the defendant
never paid the general contractor for the paving materials and
services. Again, however, no details are mentioned. Recent articles in
the Flint Journal report that the two incorporators were recently
sentenced to prison by a Federal judge for their participation in a
HUD housing scandal in the Flint area. They are presently suing a
third associate involved in that venture. Flint Journal, November 19,
1975; March 9, 1976; March 20, 1976; July 3, 1976.

statement of account with the Eaton County Register of Deeds within 90 days after the work was completed. MCLA 570.5; MSA 26.285.

The next step in the perfection of a mechanic's lien is service of a copy of the recorded statement on the property owner. MCLA 570.6; MSA 26.286. The plaintiff's difficulties began at that point.

MCLA 570.6 provides in part:

"Every person recording such statement * * * shall within 10 days after the recording thereof, serve on the owner, * * * if he can be found within the county * * * a copy of such statement or claim; but if [the owner cannot] * * * be found within the county where such premises are situated, then such copy shall be served by posting in some conspicuous place on said premises *within 5 days after the same might have been served personally* * * * ." (Emphasis supplied.)

The underscored language was the basis of the defendant's motion for summary judgment on Count I. After learning that the partners could not be served personally within Eaton County, the plaintiff served a copy of the recorded statement by posting it on the premises of the mobile home park and sending a copy to the defendant by certified mail. The service by posting was accomplished seven days after the statement was recorded. The defendant argued that the service was not effective because the quoted statute requires that the lienor attempt personal service within the county for 10 days before resorting to service by posting if all attempts at personal service are unsuccessful. Under this view of the statute, service by posting may only be used between the 11th and 15th days. Since service in the present case occurred on the seventh day, the defendant argued that the lien had never been perfected. The plain-

tiff countered that service by posting was appropriate at any time within the first 15 days once it was determined that personal service within the county would be impossible.

The trial judge adopted the defendant's interpretation of the statute. We agree. The statute shows a clear preference for personal service when it is possible. Requiring attempts at personal service for at least 10 days before substituted service may be used enforces that preference for personal service. We believe that was the legislative intent. *Spartan Asphalt Paving Co v Tri-Cities Construction, Inc,* 68 Mich App 305; 242 NW2d 565 (1976).

We find that the plaintiff was not in strict compliance with the statutory mandate; but we believe that the plaintiff did substantially comply. As mentioned, several of the other preliminary lien requirements had already been satisfied. There is no suggestion in this record that the defendant could have been served personally in Eaton County within the 10-day limitation. Nor is there any suggestion that the defendant did not receive actual notice by certified mail that the lien documents had been recorded with the Register of Deeds. The plaintiff made an extensive effort to fully comply. We see no possibility that the defendant was prejudiced by the fact that service occurred on the seventh rather than the eleventh day. We conclude that the plaintiff substantially complied with the statutory requirements.

But is substantial compliance sufficient? The trial judge ruled that it was not, citing *Zilz v Wilcox,* 190 Mich 486; 157 NW 77 (1916). See also *Spartan Asphalt Paving Co v Tri-Cities Construction, Inc, supra. Zilz* is typical of the cases which hold that the mechanic's lien statute, being in derogation of common law, must be strictly inter-

preted. The earliest case to that effect cited in *Zilz* was *The Hannah & Lay Mercantile Co v Mosser,* 105 Mich 18; 62 NW 1120 (1895). That decision relied upon cases from other jurisdictions and a 19th Century mechanic's lien treatise.

*Vorrath v Garrelts,* 35 Mich App 463; 192 NW2d 547 (1971), typifies another line of cases holding that the mechanic's lien statute must be strictly interpreted "until the lien attaches" and may be liberally interpreted after that point. See also *Burman v Ewald,* 192 Mich 293; 158 NW 853 (1916), citing *Lacy v Piatt Power & Heat Co,* 157 Mich 544; 122 NW 112 (1909), citing *Smalley v Northwestern Terra-Cotta Co,* 113 Mich 141; 71 NW 466 (1897).

But both lines of cases ignore the clear mandate of MCLA 570.27; MSA 26.307:

"*This act* is hereby declared to be a remedial statute and *to be construed liberally* to secure the beneficial results, intents and purposes thereof; *and a substantial compliance with its several provisions shall be sufficient* for the validity of the lien or liens hereinbefore provided for * * * ." (Emphasis supplied.)

The original version of our present mechanic's lien act was passed as 1891 PA 179. The quoted language was added to § 27 of the act by 1897 PA 143. Despite the clear statutory language, most of the cases decided since 1897 have insisted on strict compliance.[3] But the majority cases appear to have misinterpreted earlier precedent. We can see no sound legal justification for ignoring the clear legislative mandate.

---

[3] There have been exceptions. *See Fairbairn v Moody,* 116 Mich 61; 74 NW 386 (1898), *Martin v Trautz,* 218 Mich 51; 187 NW 370 (1922), *Hurd v Meyer,* 259 Mich 190; 242 NW 882 (1932), and, much more recently, *Georgia-Pacific Corp v Central Park North Co,* 394 Mich 59; 228 NW2d 380 (1975).

The cases typified by *Zilz v Wilcox, supra, i.e.,* those holding that the mechanic's lien act must be strictly construed because it is in derogation of common law, rely upon cases which pre-date the enactment of 1897 PA 143. The post-1897 cases in this group simply ignore the statute.

Cases like *Vorrath v Garrelts, supra,* are more likely to mention the statute but circumvent it with the rule that the statutory requirements must be strictly interpreted until the lien attaches. The basis for this rule appears to be *Smalley v Northwestern Terra-Cotta Co, supra.*[4] *Smalley* does not support *Vorrath* and the intermediate cases. *Lacy v Piatt Power & Heat Co, supra,* states that *Smalley* considered the quoted statutory language and still insisted on strict compliance. That is not true. *Smalley* did opt for a strict interpretation of the mechanic's lien act. But the Court in *Smalley* was dealing with § 27 of the act [now MCLA 570.27], as it existed before the substantial compliance language was added by 1897 PA 143. Therefore, the subsequent cases have been mistaken in their reliance upon *Smalley* as authority for disregarding the statutory language.

For the reasons stated, we conclude that substantial compliance with the various requirements of the mechanic's lien act was sufficient in the present case.[5] If that were the only issue before us, we would immediately reverse the trial court. However, on appeal, the defendant has raised another objection to the plaintiff's purported me-

---

[4] *Vorrath* cites *Burman v Ewald, supra.* The holding in *Burman* relied upon the interpretation of *Smalley* in *Lacy v Piatt Power & Heat Co, supra.*

[5] We have already found that the defendant was not prejudiced by the deviation from strict compliance. We reserve for future cases the question which will arise when a minor deviation actually prejudices a property owner.

chanic's lien. We reluctantly conclude that this second objection is well taken.

*Bezold v Beach Development Co,* 259 Mich 693; 244 NW 204 (1932), held that the protection of the mechanic's lien act does not extend to materials and labor furnished in connection with the construction of "roadways or parking grounds". *Bezold* is directly on point Supreme Court precedent. Thus we must conclude that the plaintiff cannot claim a mechanic's lien in the present case.

We reach that conclusion reluctantly. The coverage of the mechanic's lien act is described by MCLA 570.1; MSA 26.281. That section's list of materials and services which are covered extends for nearly four pages. Such an extensive effort might have been read as a legislative attempt to include virtually every form of property improvement. However, the Supreme Court has seen fit to limit the statute's coverage to only the items which are expressly mentioned therein.

There are at least two past cases in which liens for similar paving services were discussed without mention of the *Bezold* problem. See *Knapp Transit Mix Co v Highland Greens, Inc,* 51 Mich 719; 216 NW2d 84 (1974), and *Spartan Asphalt Paving Co v Tri-Cities Construction, Inc, supra.* But both were Court of Appeals decisions which did not mention *Bezold.* Neither authorizes us to disregard *Bezold.*

Finally, we have considered the possibility that the lien might be preserved on the ground that the plaintiff furnished both lienable and non-lienable materials and services. *Chesnow v Gorelick,* 246 Mich 571; 225 NW 4 (1929), held that an architect who provided both lienable and non-lienable services was entitled to a mechanic's lien for the total value of his services. However, *Bezold v Beach Development Co, supra,* speaks directly to this point and contradicts *Chesnow.*

" 'Where a claim includes both lienable and nonlienable items, and by reason of the method of stating them, the nonlienable items cannot be segregated from the general aggregate, the entire lien must fail.' " 259 Mich at 695.

The two cases appear to present an irreconcilable conflict unless each is limited to its facts. Since *Bezold,* like the present case, involved paving materials and services, we conclude that it controls the present case.

The present Supreme Court may wish to reconsider *Bezold;* but we are bound by its holding. This matter was discussed in some detail in *Hodgkiss & Douma, Inc v Woodward Development Co,* 70 Mich App 298; 245 NW2d 725 (1976). The *Hodgkiss* panel concluded, as we do, that *Bezold* must be followed.

For the reasons stated, we hold that the plaintiff is not entitled to a mechanic's lien unless the Supreme Court overrules or distinguishes its decision in *Bezold v Beach Development Co, supra.*

### Count II—Quantum Meruit

We conclude that the trial judge correctly granted summary judgment on Count II. In his opinion, he stated:

"Count II alleges only that owner-defendant has received the value and benefit of the labor performed and materials furnished by the plaintiff."

This is an accurate summary of Count II in its original form. The allegations were not then sufficient to support a recovery since there was no allegation of unjust enrichment. The original Count II did not exclude the possibility that the defendant had paid its general contractor for the services and materials furnished by the plaintiff. An allegation of unjust enrichment is the basis of

a *quantum meruit* recovery.[6] Dobbs, Remedies, § 4.2, p 237. Thus, the initial grant of summary judgment was correct. The plaintiff's motion to amend its complaint is discussed later in this opinion.

### Count III—Equitable Lien

For similar reasons, we conclude that the trial judge correctly granted summary judgment on Count III in its original form. The allegations were not sufficient to permit a finding that the defendant had been unjustly enriched at the plaintiff's expense. As long as the possibility remains that the defendant had already paid its contractor for the value of the plaintiff's materials and services, no known equitable theory would permit the court to shift the burden of the contractor's default from the plaintiff onto the defendant. See generally *Kelly v Kelly,* 54 Mich 30; 19 NW 580 (1884). Of course, that statement assumes that the partnership (defendant) and corporate (contractor) entities were not deliberately employed as devices to defraud the plaintiff. The plaintiff's motion to amend its complaint alleged precisely that type of improper dealing.

### The Motion for Reconsideration

The focus of the motion for reconsideration was Count I. We have already concluded that the

---

[6] Since the adoption of the General Court Rules of 1963, Michigan recognizes only one form of action which is known as a "civil action". GCR 1963, 12. In holding that Count II would not have supported a *quantum meruit* recovery, we are actually saying that the factual allegations in Count II did not describe a recognized theory of recovery. In this instance, we measured the allegations against the form of action known as *quantum meruit* before the adoption of the court rules.

plaintiff cannot recover on a mechanic's lien theory. It necessarily follows the trial judge correctly denied the motion for reconsideration.

## The Motion to Amend the Complaint

The plaintiff was required to seek leave of the trial court to file its amendment. The court rules provide that leave shall be freely given when justice so requires. GCR 1963, 118.1. While rulings on such motions are entrusted to the discretion of the trial courts, the appellate courts of this state have consistently held that leave should be granted unless unfair prejudice to the opposing party would result. The possibility that the opposing party might lose if the amendment is allowed is not the sort of "prejudice" which will bar amendments. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649; 213 NW2d 134 (1973).

Our problem on appeal is that we do not know why the trial judge denied the motion. His written opinion did not even mention the motion to amend. The subsequent order curtly denied the motion without explanation.

The judge may have denied the motion to amend because the plaintiff delayed filing the motion for several months after the judge announced that he would grant summary judgment. Undue delay may be a valid reason for denying such a motion if the delay has unfairly prejudiced the opposing party. *Ben P Fyke & Sons v Gunter Co, supra.* Alternatively, the judge may have been convinced that the defendant would win at trial even if the plaintiff were allowed to amend its complaint. *Ben P Fyke & Sons* warns judges to be careful if they deny motions to amend on that basis. Only if the amended complaint is "legally insufficient on its face" may the judge use his opinion on the merits

as a reason for denying a motion to amend. 390 Mich at 660.

In *Ben P Fyke & Sons v Gunter Co, supra,* the Supreme Court reaffirmed its earlier holding in *LaBar v Cooper,* 376 Mich 401; 137 NW2d 136 (1965), that the exercise of judicial discretion in rulings on motions to amend must be supported by a statement of reasons for the ruling.

"To safeguard and implement the policy favoring amendment, this Court has directed that upon denial of a motion to amend 'such exercise of discretion should be supported by specific findings as to *reasons* for the same'." (Emphasis in original.) 390 Mich at 656–657.

Since no reasons were stated in the present case, we must reverse the judgment and remand for further proceedings on the plaintiff's motion to amend.

## Proceedings After Remand

It appears that the plaintiff's chances for ultimate success will depend upon substantiation of its amended allegation that the defendant has never paid anyone for the value of the plaintiff's materials and services. Unjust enrichment lies at the heart of both remedies sought by the plaintiff as well as the other possibilities noted below.

If the defendant has never paid its contractor for the plaintiff's paving materials and services, we fail to see why the plaintiff cannot simply initiate garnishment proceedings to execute on its default judgment against the contractor. Depending upon the detailed proofs, the plaintiff's *quantum meruit* and equitable lien theories may be viable. But

neither fit as easily as garnishment into the case law precedent of this state.[7]

If the defendant has made a good faith full payment to the contractor, we can see no possibility of a recovery by the plaintiff unless the Supreme Court overrules *Bezold v Beach Development Co, supra.* There is no law against the same individuals being involved in separate business entities which deal with each other.

The final possibility is that the defendant has paid its contractor but, because of the interlocking ownership, the only real purpose for the payment was to block plaintiff's recovery. While we have serious doubts about the plaintiff's ability to prove its case on that theory,[8] those doubts of the merits of the case should be tested by a motion for summary judgment under GCR 1963, 117.2(3), not in the context of a motion to amend. *Ben P Fyke & Sons v Gunter Co, supra.*

---

[7] Another major obstacle to a *quantum meruit* recovery is the absence of any direct dealing between the plaintiff and defendant. There obviously was no contract "in fact" between the two; and we have been unable to find any cases which have implied a contract in this type of situation. The problem might be overcome by "piercing the veil" of the separate corporate entity; but that will not be an easy task. *Compare Burton Drywall, Inc v Kaufman,* 69 Mich App 85; 244 NW2d 367 (1976), with *Brown Brothers Equipment Co v State Highway Commission,* 51 Mich App 448; 215 NW2d 591 (1974).

The equitable lien theory is similarly handicapped by the absence of direct dealing. *Tustin Elevator & Lumber Co v Ryno,* 373 Mich 322; 129 NW2d 409 (1964). Most of the cases also require a written contract since an equitable lien is an interest in real estate. *Fredricks Lumber Co v Evans,* 266 Mich 486; 254 NW 176 (1934).

[8] As we noted in footnote 4, *supra,* Michigan has abolished the old forms of action and now recognizes only "civil actions". Thus the plaintiff is not limited to its *quantum meruit* and equitable lien theories if the allegations in its motion to amend would support a recovery on some other recognized theory. 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Author's Comments, Rule 12, p 11. Properly framed, the allegations might support recovery on a fraud theory. The facts also might permit the court to "pierce the corporate veil" in support of any of the recovery theories. *See* footnote 7, *supra.*

The complexity of these alternative procedures only serves to emphasize the need for a clarification of the mechanic's lien issues discussed in the first section of this opinion. While precedent required our holding that no mechanic's lien was created, we would welcome an appeal by the plaintiff on that issue.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

D. E. Holbrook, Jr., J. *(concurring)*. Being of the opinion that *Bezold v Beach Development Co,* 259 Mich 693; 244 NW 204 (1932), and *Hodgkiss & Douma, Inc v Woodward Development Co,* 70 Mich App 298; 245 NW2d 725 (1976), control as to the mechanic's lien issue I feel it was unnecessary for the majority to address itself to other phases of that issue, their reasoning and resolution as to which I cannot fully subscribe. As to the balance of the opinion I concur in full.